UNITED STATES, Appellee

v

CARLTON J. MORTENSEN, Private E–1, U. S. Army, Appellant

8 USCMA 233, 24 CMR 43

No. 9606

Decided September 13, 1957

First Lieutenant Lawrence R. Fullem argued the cause for Appellant, Accused. With him on the brief were Lieutenant Colonel James M. Scott and First Lieutenant Bert M. Gross.

First Lieutenant Richard W. Young argued the cause for Appellee, United States. With him on the brief was Lieutenant Colonel Thomas J. Newton.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

We granted accused's petition for review to ascertain whether he had been denied a fair trial because of certain ill-advised activities on the part of the law officer. The specifically raised issue concerning his eligibility to act will be spelled out as we relate the facts relevant thereto.

The accused was originally charged with burglary and assault with intent to commit rape, in violation of Articles 129 and 134 of the Uniform Code of

Military Justice, 10 USC §§ 929 and 934, respectively. Sometime following the Article 32 investigation, the specification of assault with intent to commit rape was amended to allege the lesser offense of indecent assault, and the charge of burglary was reduced to housebreaking. Originally the assault with intent to commit rape charge had alleged the overt acts committed by the accused to be that he removed the bed covers and placed his hand on the victim's leg. The overt act of the lesser

offense of assault was charged as pulling the bed covers from the victim and placing accused's hand over her mouth. During the arraignment of accused, defense counsel noticed that the specification alleging the assault had been amended by certain inked-in interlineations. They consisted of adding the phrase "fondling her leg" so that, as finally amended, the specification set out the three original offensive acts of removing the bed covers, fondling the victim, and placing his hand over her mouth. Defense counsel thereupon moved to strike the amended portion of the charge, and the law officer held an out-of-court conference to consider the merits of the motion.

The out-of-court conference is reported in the record, and from it we glean the following facts: On the morning of trial the law officer was furnished a copy of the charges, and he incurred some reservations as to whether the specification stated facts sufficient to allege with certainty the offense of indecent assault. He decided to seek advice, and he thereupon contacted a civilian attorney in the office of the staff judge advocate. They concluded the specification was probably insufficient, and the assistant staff judge advocate was then consulted. Apparently at that conference a decision was reached that the specification should be amended to allege the act of fondling, and trial counsel was contacted by the law officer and directed to write in the required amendment.

After making a complete disclosure of his activities in connection with the amendment, the law officer undoubtedly recognized his injudicious behavior, for he interrogated defense counsel as to whether he desired to challenge the law officer for his pretrial participation. Defense counsel, in reply, stated that he was personally satisfied that the activities of the law officer would have no effect on the latter's rulings, his treatment of the issues, or his attitude toward the accused. He further stated that he believed all rulings of the law officer would be complete and fair and that he had no desire to exercise a challenge for cause. The law officer then overruled the motion to strike the amendments.

One further aspect of the controversy must be mentioned. After the taking of testimony was completed, the court-martial returned findings of guilt on both specifications. However, in each instance, the findings involved exceptions and substitutions and, in connection with the specification which directly concerns the issue before us, the words which were added by amendment were excepted by the findings and the verdict returned was in accordance with the crime alleged before the alteration of the specification. Thus the added phrase played no part in the ultimate result reached by the court-martial.

There can be no doubt that the action of the law officer in this instance is subject to condemnation. ■ He apparently overlooked the fact that a law officer is not authorized to carry out any judicial functions which affect the rights of an accused to a fair trial except that they be in the courtroom and on the record. Furthermore, he possibly missed the principle that he cannot pass over his judicial responsibility to occupants of the staff judge advocate's office. When, as here, a law officer concludes a specification is defective, paragraph 69 of the Manual spells out how he should proceed. Regardless of the method employed to effectuate the amendment, the paragraph envisions that the matter will be before the court and not handled in an ex parte, off-the-record transaction. For some unaccountable reason, this law officer concluded that he was burdened with the responsibility of representing the Government and that he was required to inform the convening authority or the staff judge advocate of the deficiency. Aside from assuming duties rightfully belonging to trial counsel, the law officer overlooked the obvious principle that an accused is entitled to be notified of and heard on matters which change the allegations of a specification or increase the gravity of the offense being tried. Moreover, when the law officer's attention was called to the irregularity by a motion to strike, he should not have been

concerned with a challenge for cause. Rather, he should have deleted the amendment forthwith, and permitted counsel to proceed in a recognized manner. Then, had trial counsel desired to have the specification amended, he could have made an appropriate motion and it could have been disposed of in an acceptable and legal manner. The net of all this is that we seek to eliminate from military trials the volunteer out-of-court transactions sometimes engaged in by law officers and to force them to consider judicial matters only in the courtroom arena with the accused, his counsel, and a reporter present. By now all law officers ought to understand that principle and, in order to assure the accused a fair trial, it should be meticulously observed.

While we are critical of the law officer's handling of the ex parte amendment, we feel reversal is ■ not required because subsequent events rendered the error harmless. For the purpose of this case, we can pretermit the Government's contention that the error was waived when defense counsel was afforded an opportunity to challenge the law officer and the offer was rejected. Discussion of that assertion is not necessary because we find the error in this instance is cured by the findings of the court-martial. All additions to the specification which were made and to which counsel for the accused directed his motion to strike were deleted by the court-martial members when they returned their findings of guilt. For all practical purposes, they effectively sustained defense counsel's motion. Had it been granted, all that the motion to strike would have accomplished would be to restore the specification to its original language. The specification would then have been couched in identical language to that used by the court-martial in its findings. The findings identify the gravity of the offense and control the maximum sentence which may be imposed. Here they were specifically tailored to the crime of assault and battery, which was the least serious crime alleged before the amendment.

Some argument is advanced that the findings do not cure this particular error because the court-martial ■ was presided over by a law officer who was disqualified to perform the duties of his office and, therefore, the trial was a nullity. There might be some merit to the argument if we were faced with the lack of the statutory qualification— as distinguished from eligibility—set out in Article 26 (a) of the Code, 10 USC § 826. But here we have no more than an error arising out of pretrial activities. At best, it could be no more than prior participation in the same case by a law officer, and Congress has not decreed that this reaches the level of a disqualification which will cause the court to be illegally constituted. Moreover, in this instance, the right to challenge was specifically waived and, as we are not confronted with a disqualification which would take from the court-martial the power to proceed, its findings and sentence are not void. So long as they are valid and legal, they effectively cure the error.

We, therefore, conclude that accused's contention he was denied a fair trial must be overruled. Aside from the fact that accused was not prejudiced by the conduct of the law officer, the evidence supports adequately the findings returned and, in view of this offense and accused's three previous convictions, the sentence imposed is far within legal limits. In addition, from our inspection of the record, defense counsel correctly anticipated the fairness of the law officer's rulings and his attitude toward the accused, for we find no improper rulings of any significance.

The decision of the board of review is affirmed.

QUINN, Chief Judge (concurring in the result):

Although the law officer directed the change in the specification, in my opinion, by so doing, he did not ■ assume the role of trial counsel. Cf. United States v Self, 3 USCMA 568, 13 CMR 124. The worst that can be said of his action is that it indicates a misconception of his judicial functions by claiming the right to amend a specification to con-

form with his prior knowledge of the case. See United States v Fry, 7 USCMA 682, 23 CMR 146. It is from that point of view that the law officer's actions must be judged, and, judged in that light, the accused was not harmed.

The nature of the law officer's misconduct did not bring him within one of the statutory grounds of disqualification. Article 26(a), Uniform Code of Military Justice, 10 USC § 826. The accused and his counsel were fully apprised of the facts and afforded an opportunity to challenge him. Defense counsel, however, maintained he was "satisfied" that what had been done "would have absolutely no effect" upon the law officer's rulings, and that the law officer would be "completely fair on all rulings." He further indicated that he had "no desire to challenge" the law officer. Under these circumstances I agree with the conclusion that the accused waived the impropriety in the law officer's conduct. At the same time, I express no opinion on the right of an accused to refuse to stand trial on a charge which is materially different from that actually referred to trial. Cf. United States v Rodgers, 8 USCMA 226, 24 CMR 36. Stewart v United States, 12 F2d 524 (CA9th Cir).

FERGUSON, Judge (dissenting):

I dissent.

Unlike my brothers who do no more than condemn the "ill-advised activities," the "injudicious behavior," the "misconduct," and the "impropriety," on the part of the law officer, I prefer to go further and reverse this conviction because of the inherently prejudicial nature of the conduct involved. In my view, justice requires no less. Since I would reverse this case, I feel impelled to submit the reasons for the view I take of the problem. To fully comprehend the issue here involved, a detailed analysis of the law officer's "extracurricular" pursuits will prove helpful. The story is best told in the language of the record itself.

The accused was originally charged with the offense of assault with intent to rape the victim "by removing the bed covers from her and placing his hand on her leg." After completion of the Article 32 investigation, however, the staff judge advocate recommended and the convening authority directed that the accused only be brought to trial for the lesser offense of committing an indecent assault on the victim by "pulling the bed covers from her and placing his hand over her mouth with the intent to gratify his sexual desires." On October 18, 1956, the case was referred to trial which began on October 25, 1956, at 12:06 p.m. Sometime between 11:30 and 11:45 on the morning of trial, the law officer determined the specification in its then present form alleged no greater offense than assault and battery. After hearing from "general conversation about the office that there had been a touching her leg or something like that," the law officer suggested to a civilian attorney employed in the staff judge advocate's office that the specification be amended to include the words "fondling her leg." The law officer's suggestion gained acceptance with the civilian attorney and together they sought out the staff judge advocate in order to bring the matter to his attention. The latter could not be located and the matter was then brought to the attention of the executive officer. The latter was told by the law officer that "the thing would either have to be amended for indecent assault or as it stood I would read it as assault and battery." The executive officer replied, "Well, let's amend the specification," and the law officer then informed the trial counsel who inserted the words "fondling her leg" in the specification.[1]

---

[1] Interestingly enough, the civilian attorney, who was consulted by the law officer, later authored the post-trial review which was concurred in by the executive officer as the "Acting Division Staff Judge Advocate." The problem was disposed of in the post-trial review by declaring "the whole question an academic one." Furthermore it appeared to the reviewers that there had been "no resultant prejudice to the accused from the denial of the motion, since there is abundant evidence in the record to support the court's findings."

Prior to arraignment the defense counsel sought an out-of-court hearing for the purpose of presenting a "motion to strike certain parts of the specification." In the closed hearing he moved to strike so much of the specification as alleged the words "fondling her leg." The trial counsel was examined under oath and he testified that prior to being consulted by the law officer together with his entourage composed of the executive officer and the civilian attorney, he had no intention of changing the specification from its original form. In his opinion the specification, as originally presented, "without the addition of the mentioned words would probably state an offense of indecent assault," but since the law officer had informed him the specification was insufficient, and since "he was the man who was going to be ruling on the thing, I changed it to obviate any trouble during trial." Defense counsel renewed his motion to amend the specification by striking the words "fondling her leg." He contended that "an accused has a right to go to trial on a specification free from any gratuitous interference by the law officer of the case," and but for the law officer's unwarranted interference "the accused would be going to trial now on a specification that alleged assault and battery." It was further noted that by amending the specification the maximum authorized period of confinement was increased from six months to five years.

Defense counsel further argued that it was not the duty of the law officer to bring such matters to the attention of the convening authority. The law officer then inquired whether defense counsel had "any authority" for that proposition. The latter answered in the negative, explaining that the incident was so recent in point of time that he hadn't had "a chance to check." At this stage of the proceedings, the trial counsel offered "the position of the government in this case that no impropriety whatsoever has entered into this case." He vigorously asserted that the Government's "hands have been clean throughout the entire proceedings." The law officer then inquired of defense counsel if he thought that a law officer

upon noticing an ambiguous specification "should remain silent about it altogether and not bring it to anyone's attention?" Defense counsel succinctly answered, "It isn't his duty." The law officer then inquired whether defense counsel considered his activities as grounds "for challenge for cause." The defense counsel replied that he was "personally satisfied that what you have done in the pretrial stages of this case would have absolutely no effect on your ruling or anything like that and that you will be completely fair on all rulings." However, as concerned his motion to strike, he felt the question had already been "amply covered." The law officer thereupon denied the motion to strike, together with the reminder that the "accused knows that naturally all these proceedings get reviewed and everything else, both here, and all that sort of stuff."

In my view the law officer, by his unwarranted, unsolicited, and uncalled-for activities prior to trial, had completely disqualified himself from acting in the capacity of law officer in the instant case and especially from ruling on the motion to strike. His conduct was so inherently prejudicial to the substantial rights of the accused as to amount to a denial of military due process. A more aggravated departure from the conduct expected of one acting in a judicial capacity is difficult to imagine. Instead of occupying the desk reserved for the law officer, he should have more properly been seated behind the trial counsel's table.

One of the primary goals sought to be achieved by the enactment of the Uniform Code of Military Justice was the creation of the position of law officer with duties and functions comparable to those of a civilian trial judge. In the House Hearings on the Uniform Code of Military Justice, Professor Morgan, whose efforts were instrumental in securing Congressional adoption of the Code, stated in response to a Committee inquiry into the role of the law officer:

"Well, the fundamental notion was that the law officer ought to be as near like a civilian judge as it was

possible under the circumstances." [Hearings before House Armed Services Committee on H.R. 2498, 81st Congress, 1st Session, page 607.]

Similar sentiments are frequently interspersed throughout the House and Senate Hearings and Reports on the Uniform Code of Military Justice. Hearings before House Armed Services Committee on H.R. 2498, 81st Congress, 1st Session, page 1153; Hearings before Senate Armed Services Committee on S. 857 and H. R. 4080, 81st Congress, 1st Session, pages 40, 57, 287; Senate Report No. 486, 81st Congress, 1st Session, page 6.

A long unbroken line of decisions of this Court eloquently attests to the efforts made to equate the position occupied by the law officer to that held by a trial judge in civilian practice. It was recognized early in the history of this Court that only by such equation could the broad and sweeping remedial changes in the system of military justice envisioned by the Congress in the Code become a reality. In the early case of United States v Berry, 1 USCMA 235, 2 CMR 141, we held it to constitute reversible error for the president of a court-martial to usurp the functions of the law officer. In the course of our opinion we said:

". . . The complete independence of the law member and his unshackled freedom from direction of any sort or nature are, we entertain no doubt, vital, integral, even crucial, elements of the legislative effort to minimize opportunity for the exercise of control over the court-martial process by any agency of command. It follows that any abdication by the law member of his statutory duties and an attendant usurpation of those functions by the president—much more directly a representative of the convening authority—must be viewed with stern suspicion."

We made it crystal clear in that case that "the law member's position with respect to a court-martial is closely analogous to that of the judge in the criminal law administration of the civilian community," and that while occupying such position he represents "the external and visible symbol of the law in a process which has long been characterized as juristic and must be genuinely regarded as such."

In United States v Jackson, 3 USCMA 646, 14 CMR 64, we voiced the sentiment that the law officer was "not a mere figurehead in the courtroom drama," and that he must "direct the trial along paths of recognized procedure in a manner reasonably calculated to bring an end to the hearing without prejudice to either party." In United States v Stringer, 5 USCMA 122, 17 CMR 122, we discussed the inherent power existing in a law officer—similar to that found in a civilian trial judge—to declare a mistrial where warranted by the circumstances. A law officer may now properly entertain a motion for a change of venue where the interests of justice so require. United States v Gravitt, 5 USCMA 249, 17 CMR 249. The Federal rule permitting a trial judge to comment on the evidence—without infringing upon the accused's right to an impartial trial by jury—was adopted in military practice and a law officer may now comment upon the evidence in court-martial trials. United States v Andis, 2 USCMA 364, 8 CMR 164. In United States v Knudson, 4 USCMA 587, 16 CMR 161, we declared that: "Federal practice applies to courts-martial procedures if not incompatible with military law," and, accordingly, we held that the law officer in the exercise of his discretion was the proper person to rule on an application for continuance and that interference by the convening authority would not be tolerated. The practice familiar in civilian courts of reserving decision on a motion raising a question of law, until after the verdict of the jury has been returned, was approved by this Court where there was "no compelling reason requiring a different practice in the military." United States v Strand, 6 USCMA 297, 20 CMR 13. In accordance with the Federal Rules of Criminal Procedure we adopted a practice which permits the law officer to challenge a court member on his own motion. United States v Jones, 7 USCMA 283, 22 CMR 73. In United States v DeAngelis, 3 USCMA 298, 12 CMR 54, we advised

law officers that they "should not hesitate to employ" the contempt powers contained in Article 48 of the Code against counsel who by their obstructive and abusive actions flout the authority of the law officer.

In United States v Smith, 6 USCMA 521, 20 CMR 237, we reversed a conviction, where the law officer failed to declare a mistrial on his own motion, because of the court-martial president's improper and accusatory questioning of an accused. In another case we reversed a conviction on the doctrine of cumulative error because of repeated acts of misconduct by the law officer during the trial. United States v Walters, 4 USCMA 617, 16 CMR 191. In the leading case of United States v Keith, 1 USCMA 493, 4 CMR 85, we voiced stern disapproval of the practice which permitted the law officer to confer with members of the court outside the presence of the trial counsel, defense counsel, and the accused. In reversing a conviction we there said:

". . . No one who has read the legislative history of the Code can doubt the strength of the Congressional resolve to break away completely from the old procedure and insure, as far as legislatively possible, *that the law officer perform in the image of a civilian judge*. This policy is so clear and so fundamental to the proper functioning of the procedural reforms brought about by the Uniform Code of Military Justice that it must be strictly enforced." [Emphasis supplied.]

Recently in United States v Fry, 7 USCMA 682, 23 CMR 146, we held that it "was not good practice for the law officer to review the investigating officer's report and the testimony of the witnesses" prior to trial. Although such conduct was not considered to fall within the overall pattern of disqualification established by the Code, "it is too close to a violation of its spirit to merit approval." In United States v Crunk, 4 USCMA 290, 15 CMR 290, we applied the doctrine of separation of functions by holding that a person who had acted as a law officer in a case was thereafter disqualified from participating in the preparation of the staff judge advocate's review. We even adhered to this doctrine in a case where the posttrial review was prepared by an officer who had previously served as law officer at the trial of a co-accused. United States v Turner, 7 USCMA 38, 21 CMR 164. In United States v Wilson, 7 USCMA 713, 23 CMR 177, we had occasion to reaffirm the principle of our earlier cases, which held that it is the law officer who bears the primary burden of insuring that the court-martial is instructed on all lesser included offenses raised by the evidence. In the course of our opinion, we said that:

". . . If we are to build a real system of military justice, we must ensure that the law officer is shouldered with the responsibility of seeing to it that the court-martial members are given proper guideposts to reach a fair and just verdict, counsel for the parties notwithstanding. If he is to find his proper place in the scheme of military law, and bear his responsibility to the Government, the accused and the system, we do not believe he can be stripped of the right of final decision as to what instructional guidance will lead the court to a proper decision."

The sum total of all these cases seeks for its purpose the sound erection of a trial system with the law officer at its apex. It was to elevate the role of the law officer that we clothed him with substantially the same rights, duties, functions, and obligations of a civilian trial judge. It is not too much to expect that one occupying a judicial position conduct himself in a judicious manner. From this Court's very inception we moved in the direction of creating an independent judicial officer who would demean himself with the dignity and stature customarily found in civilian trial judges. In our prior decisions we took great strides in an effort to accomplish this laudable objective. Today, I regret, we take a giant step backward.

In United States v Hayes, 7 USCMA 477, 22 CMR 267, we said that in a general way "the position of staff judge

advocate can be likened to that of a district attorney." We have also said that a convening authority may similarly be equated to a grand jury. United States v Roberts, 7 USCMA 322, 22 CMR 112. As previously shown we have often declared that the position of law officer is comparable to that of a civilian trial judge. United States v Berry and United States v Keith, both supra. Can one seriously imagine an instance in civilian criminal practice where a trial judge, shortly before trial, without the accused's knowledge, seeks out the district attorney and importunes him to amend a grand jury indictment so that a more serious offense is thereby alleged? It cannot be so.

I also wish to voice my dissent from any attempt to invoke the doctrine of waiver in this case. Defense counsel made timely objection to the law officer's pretrial activities in the out-of-court hearing. He forcefully and cogently stated his position. Considering the disparity in their respective ranks (the law officer was a Major whereas defense counsel was a First Lieutenant), together with the fact that the executive officer had knowingly acquiesced in the law officer's pretrial activities, as well as the conclusion reached by the Court in the principal opinion that the law officer "should not have been concerned with the challenge for cause," I believe the defense counsel made the most of a very bad situation. To have challenged him for cause would, in my opinion, have constituted a vague and useless gesture, for the law officer, by his actions, had clearly indicated that he had not the slightest conception of the injudicious and prejudicial nature of his conduct. United States v Smith, supra.

I would reverse.