UNITED STATES, Appellee

v

FREDERICK A. RENTON, Private First Class,
U. S. Marine Corps, Appellant

8 USCMA 697, 25 CMR 201

No. 10,113

Decided February 14, 1958

*Commander Charles Timblin,* USN, argued the cause for Appellant, Accused.

*Lieutenant (jg) John V. L. Ellicott,* USNR, argued the cause for Appellee, United States.

## Opinion of the Court

HOMER FERGUSON, Judge:

This case comes here by certificate of review forwarded by The Judge Advocate General of the Navy, pursuant to Article 67(b)(2) of the Uniform Code of Military Justice, 10 USC § 867, to resolve the following issues:

"1. Were the substantial rights of the accused materially prejudiced by the failure of the general court-martial to sustain the challenge of the Law Officer for cause?

"2. In view of the similarity of the offenses under Charge I and Charge II, were the substantial rights of the accused materially prejudiced by the instruction of the Law Officer as to the maximum sentence that could be adjudged?"

As a proper background for the consideration of these issues, only a brief statement of the facts is necessary.

In November 1956, the accused was tried by general court-martial at the Marine Corps Recruit Depot, Parris Island, South Carolina, for numerous violations of the punitive Articles of the Code, supra. The offenses arose out of the accused's mistreatment of members of a recruit platoon. He was specifically charged with six specifications alleging the violation of a recruit training command order, six specifications alleging maltreatment of personnel subject to his command, three specifications alleging assault and battery, and one specification of wrongfully communicating a threat, in violation of Articles 92, 93, 128, and 134 of the Code, supra, 10 USC §§ 892, 893, 928 and 934, respectively. The accused had entered a plea of guilty to two specifications of maltreating personnel and was found guilty of an additional offense of maltreatment, and one specification of violating the recruit training command order. He was found not guilty of all remaining charges and specifications. The board of review, in an opinion in which the issues now before us were considered, affirmed the findings and sentence as approved by the convening authority.

During the challenge stage of the proceedings, the trial counsel inquired of the law officer whether he was aware of any fact which might constitute a ground for challenge against him by either side. The law officer thereupon informed the court as follows:

"LO: At this time the law officer wishes to state for the record that he was called upon to render technical assistance in the drafting of the charges to Captain Morgan who was in the investigation at that time upon his request and upon the authorization of the Depot Legal Officer. The law officer will be glad to answer any question that either counsel may wish to put to him regarding the matter."

When requested by defense counsel to elucidate in more detail "as to just how this technical assistance was rendered," the law officer replied:

"LO: The assistance was done in this manner. At least what I susposed [sic] to be a hypothetical—or rather on one charge there were more specifications than one and I asked Captain Morgan the date, time, and what he wanted to charge him with. In other words, I had to get enough information from him in order to write the specification. The name of the accused, the name of the alleged victim, the date, the place and the manner in which the alleged offense was susposed [sic] to have taken place."

Defense counsel, still not satisfied by the law officer's answers, again pressed for further explanation, whereupon the law officer stated that:

"LO: I drafted, under Charge I, one specification and gave it to him as a guide to draft the remainder of the specifications under Charge I. I did the same on Charge II, Charge III, and as I recall I merely pointed

698

out the specification, the sample specification, under Charge IV contained in the Manual, showed it to him and told him to follow that. I will add further that he brought these specifications, after he had drafted them, back to me to check over."

At the conclusion of this statement, defense counsel moved to challenge the law officer for cause, citing paragraph 62f(13), Manual for Courts-Martial, United States, 1951, as a "foundation" for his motion.[1] At this stage of the proceedings, trial counsel re-entered the picture by inquiring of the law officer whether he was prejudiced against the accused in any way, to which the law officer replied in the negative. After appropriate instructions had been given, the question of challenge was submitted to the court-martial for its consideration. The court-martial deliberated some thirty minutes, and then reopened and requested the law officer to "restate" the extent to which he had participated in the preparation of the charges and specifications in the case. The following colloquy then ensued, and which, because of its relevance to the issue under consideration, is set forth in its entirety:

"LO: Yes, sir. Captain Morgan of the G–2 office conducting some type of investigation into the allegations of this case came to the Depot Legal Office and asked for some assistance in drawing the specifications. He went to the Legal Officer who was Major Faw, at that time, and Major Faw asked me to render a hand with technical assistance. That was his very words. I told Captain Morgan that I did not want to know any of the facts of the case over and above what was absolutely necessary to technically draft them. That is, to put down the matter in writing. I asked him what he wanted to charge the man with. He told me. I said,

'Alright, give me the man's name, the date, the time, the victim, and so forth.' In regard to Charge I, which is violation of Article 92, certain instances of violation of a Recruit Training Command Order, I asked him how he wanted to allege what he did to violate the order. What part of the order was he talking about. He gave me that information. I drew one specification of the lot under charge I and told him to use that as a sample to draw the remaining specifications that he wanted to draw. I did the same thing under the other charges on which he had more than one specification under. As far as Charge IV was concerned I merely turned to this sample specification in the Manual for Courts-Martial here and showed him that and told him to use that sample that was in there. Once Captain Morgan completed drawing the specifications he brought them back to me to check over. There were certain corrections I suggested. I do not know what they were now. There were some changes I suggested to him. I can't recall exactly what the changes were. That is the complete story on it the best that I can recall.

"COURT-MEMBER: Major Holben, did the Depot Legal Officer, now Lieutenant Colonel Faw, know—I'm sorry, Major Herod. Did the Depot Legal Officer, now Lieutenant Colonel Faw, know at that time, when you rendered this technical advice, that you would be the law officer of this case?

"LO: I am sure that he did because I went to him and told him—Well, back up a minute. Captain Morgan came into my office first and told me that Major Faw had said I should help him, so I went to see Major Faw, at the time, and checked with him on this matter as to whether or not he intended for me to sit as law officer.

---

[1] "Challenges for cause—grounds for. —Among the grounds of challenges for cause against members of special and general courts-martial and (unless otherwise indicated by the context) the law officer of a general court-martial are the following:

• • • • • •

(13) Any other facts indicating that he should not sit as a member or law officer in the interest of having the trial and subsequent proceedings free from substantial doubt as to legality, fairness, and impartiality."

He said that he did. I do recall one thing further that came up now that I think of it. There was a question in Captain Morgan's mind on one of the charges as to what he should charge him with and he started to relate some facts to me and once again I took him back to Major Faw and told him that I wanted him to straighten him out. That I was not to make any determinations as to what the charges were but merely to assist him in drafting the specifications after he had determined what to charge him with. To give you a short answer, Major Faw anticipated that I would sit as law officer.

"COURT-MEMBER: Major Herod, do you feel that any person with a minimum of background could have accomplished the technical assistance which you rendered in this case?

"LO: That is a hard one to answer, sir. I do not want to be egotistical about it but there were some technicalities involved that took more than a minimum acquaintance with the Code to do.

"COURT-MEMBER: What I am getting at, was the drafting of these specifications which you did in this case—did it present a challenge to your professional ability as a law officer?

"LO: Yes, sir. There was some law that I had to look up on it."

The court-martial then retired, and *upon reopening, announced that defense counsel's challenge of the law officer for cause was not sustained.* The trial then proceeded to its conclusion, during the course of which the law officer rendered numerous rulings, many of which were entirely favorable to the accused. A motion for a finding of not guilty as to two offenses was sustained by the law officer and the court-martial acquitted the accused of ten other offenses.

The board of review, after reviewing the record, found "that the actions, remarks and rulings of the law officer in the performance of his duties were fair and orderly and his instruction to the court were full and correct on the law of the case." It was unable to find

any evidence that the law officer's prior participation had any prejudicial effect upon the trial and the substantial rights of the accused. In reaching its conclusion that the challenge for cause was properly denied, the board placed great reliance on this Court's recent decision in United States v Fry, 7 USCMA 682, 23 CMR 146. We, however, take a different view.

In all candor, we must acknowledge at the outset that the board, in the course of its decision, observed that "it was not good practice for the law officer to draft specifications for use in a trial over which he was to preside" and that the law officer's activities, while not within the scope of the overall pattern of disqualification established by the Code, "is close to a violation of its spirit and should not be practised." These observations by the board completely miss the mark. The basic and immutable issue, as we view it, involves the inherent integrity of a court-martial.

I

Public confidence in military justice, which is so vital to the successful operation of the military establishment, will prevail only so long as there exists in court-martial proceedings an atmosphere of complete and unshackled freedom from command direction and partiality. Since the pioneer days of this Court's development, it has eagerly sought, whenever the occasion has presented itself, the opportunity to raise the level of military justice to the high and preferred place where it belongs in our free society. In doing so, we were doing nothing more than carrying out what we considered and sincerely believed to be the intent of the Congress of the United States, as evidenced by its overwhelming adoption of the Uniform Code of Military Justice. It was the Congress that created the role of law officer and sought to mold him as nearly in the image of a "civilian judge as it was possible under the circumstances." Hearings before the House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, page 607. In the very first volume of

this Court's decisions, we gave prominence to this Congressional intent by acknowledging the "complete independence of the law member" and we reversed a conviction where the president of a court-martial attempted to usurp many of his functions and prerogatives. United States v Berry, 1 USCMA 235, 2 CMR 141. In United States v Jackson, 3 USCMA 646, 14 CMR 64, we echoed the sentiment that the law officer was not to be considered a mere figurehead in the courtroom drama and that he must maintain an "impartial and scrupulously fair attitude throughout the trial." More recently, in United States v Kennedy, 8 USCMA 251, 24 CMR 61, we criticized a law officer who, during the trial, abandoned his role as an impartial judge and became an interested party for the Government. Here, the conduct of the law officer is no less prejudicial because it took place prior to trial. We can only look with complete disapproval upon the conduct of a law officer who actively assists the prosecution prior to trial and then subsequently attempts to sit in the case as a disinterested arbiter. Human nature being what it is, the very fact of being called upon to condemn or countenance one's own workmanship cannot create a healthy outcome and less so when the outcome concerns the accused's denial of substantial rights. Cf. United States v Mortensen, 8 USCMA 233, 24 CMR 43. Such activities on the part of a law officer are not the "stuff" that adversary proceedings are made of. In a word, the law officer should have disqualified himself without the necessity of submitting the question of challenge to the court-martial.

In the case of United States v Wilson, 7 USCMA 656, 23 CMR 120, we were confronted with a situation where an accused had pleaded guilty and the prosecution, in extenuation and mitigation, had introduced in evidence a special court-martial order which contained the signature of the officer then serving in the case as law officer. It appeared that the law officer had previously examined the proffered document and found it to be legally suffi-cident. There was no disclosure by the law officer of any previous knowledge with regard to the record. In setting aside the accused's sentence and ordering a rehearing, we held that when the law officer became a witness for the prosecution, he was thereafter disqualified from further participation in the case. Furthermore, we noted that "regardless of whether he participates actively in the hearing, the continued presence of a qualified law officer is an absolute requisite to a valid proceeding." The necessary impact of the *Wilson* case, supra, was that, "Without the presence of a law officer who is competent to preside, there just is no properly constituted court, and its acts during that time have no legal efficacy." Paragraph 8, Manual for Courts-Martial, supra. The teaching of *Wilson*, when applied to the case at bar, compels the conclusion that the law officer, by reason of his pretrial activities, became totally incompetent to serve in that capacity and the tribunal, therefore, was left without a law officer. Article 26(a) of the Code, supra, 10 USC § 826. In such a setting, it ceased to be a court-martial for any purpose but to take the necessary steps to have itself reconstituted.

The reliance placed by the board of review on our holding in the *Fry* case, supra, to support its conclusion is misplaced. In that case, it appeared the law officer had, prior to trial, read the investigating officer's report and a copy of the expected testimony of witnesses. He stated at trial that he had done so only to prepare himself for the problems which might arise at trial and to draft tentative instructions. A defense challenge against the law officer for cause was not sustained. While holding that the accused was not prejudiced by such conduct, we made it clear that "it was not good practice for the law officer to review the investigating officer's report and the testimony of witnesses." It should be immediately obvious that in the *Fry* case the law officer's pretrial activities were for the purpose of self-enlightenment, whereas here, his efforts were solely for the benefit of the prosecution.

We cannot leave this issue without

**701**

first noting that a large part of the responsibility for the conditions which existed in this case must be shouldered by the staff legal officer. As the law officer had explained at trial, the staff legal officer "anticipated" at the time the law officer was requested to assist in the preparation of the charges and specifications that he (the law officer) would eventually sit as law officer in the case. It should then have become the duty of the staff legal officer to immunize the law officer from participation in any activities which might compromise his impartial status. We can but look with sympathy at the untenable position in which the law officer found himself placed but our criticism must take a broader turn. The law officer's awareness of his pending position and the well-meaning caution and restraint he exhibited in helping to draft the specifications to avoid any appearance of advocacy lessened his efficacy in drafting the specifications and also effectively removed him from the role of impartial judge. Thus, he became less effective for both roles. A law officer should not be placed in such a position, nor should an accused. The first certified question is answered in the affirmative.

## II

We next turn our attention to the second certified issue. During the pre-sentencing procedure, the court-martial was advised that the maximum sentence which could be imposed included confinement at hard labor for five years. This figure was reached by aggregating the maximum sentences for the offense of violating a training directive by touching recruits, in contravention of Article 92 of the Code, supra, and three offenses of maltreatment of personnel subject to his orders, in violation of Article 93 of the Code, supra, each offense of which carries a maximum period of confinement at hard labor for one year. The appellant contends that the provisions of Footnote 5 are applicable.[2] He reasons that in order to prove the maltreatment of Private Howe in specification 3 of Charge II, the prosecution had to prove that the victim, Private Howe, was a person subject to the accused's orders and that the accused struck him in the stomach with his fist. Specification 2 of Charge I of which the accused was also convicted, alleged that the accused had violated the recruit training regulation by striking Private Howe in the stomach with his fist. From this, he argues that the maximum permissible confinement at hard labor for both charges is one year, thus making the total maximum authorized sentence three years instead of five. We believe the appellant's contention is well taken and that the provisions of Footnote 5 are applicable. United States v Alberico, 7 USCMA 757, 23 CMR 221. Furthermore, from what we have said, it is clear that the offense intended to be created by the general regulation is the same as that already existing under Article 93 of the Code, supra, and for the purpose of punishment the charges are multiplicious. United States v Brown, 8 USCMA 18, 23 CMR 242. The Government, in its brief, concedes that the accused may have been prejudiced by the instructions with respect to the sentence. The second certified question is answered in the affirmative.

The decision of the board of review is reversed. The record is returned to The Judge Advocate General of the Navy for such further action as may be consistent with this opinion.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur generally in the result reached by the majority opinion but, because I believe that the prior participation of the law officer in this case cast him in the role of counsel for the Government, I conclude that Article 26

[2] Paragraph 127c, Table of Maximum Punishments, Section A, Footnote 5, reads as follows:

"The punishment for this offense does not apply in those cases wherein the accused is found guilty of an offense which, although involving a failure to obey a lawful order, is specifically listed elsewhere in this table."

(a) of the Code makes him ineligible to serve. In addition, that sort of participation is ground for challenge under paragraph 62f(6) of the Manual, and when the facts bringing him within that rule are undisputed, he should be excused forthwith as that disqualification is self-operating.

Counsel for the Government do not contend that the law is to the contrary, but they seek to sustain their position by arguing that the pretrial assistance of the law officer was not that of an advocate but rather was given in the neutral capacity of an assistant to the staff judge advocate. I just do not follow that argument. I consider the present Code to be a law setting up adversarial proceedings in which it is necessary for each party to carry its burden. The Government must, by its representatives, prepare the pleadings and perfect those pretrial steps which are generally understood to be in aid of the prosecution. Particularly important to the prosecution is the drafting of specifications, and here the law officer was the principal architect on the Government's team. Moreover, as it turned out, he was the functionary who at trial was charged with the duty of ascertaining the adequacy and sufficiency of the specifications. True it is that Article 34 of the Code authorizes a staff judge advocate to make formal corrections and such other modifications as may be necessary to make the specifications conform to the proof, but the content of the Article suggests to me that he should act at that time in a judicial capacity and not as a representative of the prosecution.

Properly interpreted, the language of the Code implies that the drafting of charges will be done by someone other than the staff judge advocate. To give him power to make formal corrections presupposes the specifications are in being, and I analogize his duties to those of a committing magistrate or trial judge. Upon motion, they can make or permit the making of formal corrections and changes to conform to proof, but they cannot serve the State or Government as experts in preparing indictments, informations, or complaints. In the former office, they must protect the rights of both parties and preserve the equality of the system, while in the latter role they join as counselors for the prosecutions. It is the latter partisan course of conduct which the statute enjoins.

The reason for the rule is amply demonstrated in the case at bar, for here the prosecution was the sole beneficiary of the law officer's wisdom, and I can hardly imagine how an attorney could better serve his client in the early stages of the proceedings than by preparing the pleadings. Unfortunately, this counselor found himself immediately in the inconsistent position of being required to pass on the adequacy and correctness of his own advice. Hardly had the trial commenced when defense counsel made motions claiming improper joinder of offenses and challenging the sufficiency, completeness, consistency, and other deficiencies in the charges and specifications. Therefore, having assisted in the composition of the specifications, the law officer had to judge his own prior determinations. Forcing an accused to try his case under those circumstances is contrary to the Code and constitutes a denial of due process of military law.