**CORRECTED COPY**

**UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS**
**Washington, D.C.**

**UNITED STATES**

**v.**

**Gary M. TUSCAN,**
**Fireman Machinery Technician (E-3), U.S. Coast Guard**

**CGCMG 0233**

**Docket No. 1281**

**December 9, 2008**

General Court-Martial convened by Commander, Ninth Coast Guard District. Tried at Sault Ste. Marie, Michigan, on 22-25 January 2007.

| | |
|---|---|
| Military Judge: | CAPT Brian M. Judge, USCG |
| Trial Counsel: | LT Matthew W. Merriman, USCG |
| Assistant Trial Counsel: | LT Anthony S. Simpson, USCG |
| Defense Counsel: | LT Jeremy R. Brooks, JAGC, USNR |
| Assistant Defense Counsel: | LTJG Christopher Baker, USNR |
| Appellate Defense Counsel: | LT Robert M. Pirone, USCGR |
| | LCDR Necia L. Chambliss, USCGR |
| | LT Jeffery S. Howard, USCG |
| Appellate Government Counsel: | LT Ronald B. Seely, USCGR |
| | LT Alfred Thompson, USCGR |

**BEFORE**
**McCLELLAND, LODGE & TOUSLEY**
Appellate Military Judges

TOUSLEY, Judge:

Appellant was tried by general court-martial composed of officer and enlisted members. Contrary to his pleas, Appellant was convicted of one specification each of assault with an unloaded firearm and assault consummated by a battery, in violation of Article 128, Uniform Code of Military Justice (UCMJ). The members sentenced Appellant to a bad-conduct discharge, confinement for twelve months, and reduction to E-1. The Convening Authority approved the sentence as adjudged.

Before this Court, Appellant has assigned six errors:

I.    The military judge should not have allowed the members to hear testimony from Seaman Recruit LaPalm under a grant of immunity because the notification provisions required under M.R.E. 301(c)(2) were clearly violated.

II.   Appellant's conviction under Charge II, Specification 2 must be set aside because it is based solely on an uncorroborated confession.

III.  The adjudged sentence of 1-year confinement, an unsuspended punitive discharge, and reduction to E-1 are inappropriately severe in this case, in light of the sentence adjudged in the case of Appellant's co-actor OS3 Timothy LaPalm.

IV.   The addendum to the Staff Judge Advocate's Recommendation is inappropriate because it relies on and references discussions between Appellant and the Convening Authority relating to Appellant's unwillingness to plead guilty during plea negotiations.

V.    The military judge should have recused himself from the trial because of his participation in the trial of Appellant's co-actor LaPalm.

VI.   The military judge should have removed the senior member, CAPT Michael Hudson, because the member had previous relationships with the Convening Authority, trial counsel, and a sentencing witness and the member stated that he thought the convening of a court-martial by the Convening Authority was suggestive of guilt.

We heard oral argument on the first two assignments of error on 27 October 2008.

We reject the fifth and sixth assignments of error without comment. We also reject the second assignment of error. The standard for corroboration evidence is "very slight" and "must only raise an inference of truth." *United States v. Melvin,* 26 M.J. 145, 146 (C.M.A. 1988); *United States v. Rounds,* 30 M.J. 76, 80 (C.M.A. 1990); and *see generally United States v. Baldwin*, 54 M.J. 464 (C.A.A.F. 2001). There is sufficient evidence in the record to corroborate the Appellant's admission.

We discuss the other three assignments of error and grant sentence relief.

**Facts**

On 27 May 2005, OS3 LaPalm and Appellant[1] shared a house in Sault Ste. Marie, Michigan, with SN Charles Ryan Murphy. At approximately 1800 on that day, these Coast Guard roommates were joined by their neighbor Danielle, her boyfriend Jesse, Mike, and Cami. These four teenagers were juniors in the local high school and had on other occasions socialized in Appellant's house.

Along with watching movies and playing video games, these social events also included playful wrestling matches among the male participants. Jesse was on the high school wrestling team. The Coast Guard roommates challenged him with law enforcement take-down techniques. Jesse is also the son of a retired uniformed Coast Guard member and current civilian employee of Sector Sault Ste. Marie.

Unfortunately, the horseplay at Appellant's house got out of control on 27 May 2005. Jesse was handcuffed, hog-tied, slapped around with a belt, and, though he disputes her testimony, his girlfriend sprayed shaving cream down his pants. Appellant pointed OS3 LaPalm's handgun at Jesse while he was subdued and tied up. Jesse then learned that the gun contained dummy rounds. He was "released" and went home.

Embarrassed about this event, Jesse did not tell his parents about it when he got home. He did break up with Danielle and never returned to the Coast Guard roommates' house. Nine months later while standing in line at a local movie theater with his brother, Jesse was confronted by Appellant, who brought up the incident of 27 May 2005. Appellant let them know that he had a photo taken of Jesse hog-tied nine months earlier. Jesse's brother informed his parents, who were angry about the event and queried Jesse about it.

The event of 27 May 2005 was coincident with a change in Jesse's behavior. His mother testified that after the event Jesse began staying home and rarely hung out with friends. She also testified that the event appeared to have made him less trusting. His father reported the incident to the Coast Guard in January 2006. SN Murphy had already been discharged from the Coast

---

[1] Appellant was then a third class petty officer (MK3).

Guard. The investigation into the event then commenced and led to a joint Article 32 investigation, OS3 LaPalm's general court-martial in December 2006, and Appellant's general court-martial in January 2007.

## Grant of Immunity

After OS3 LaPalm's court-martial the government acted to gain testimonial immunity for him so that he would testify at Appellant's trial. The first hurdle for Coast Guard trial counsel seeking a grant of testimonial immunity for a witness is to receive a statement of no objection from the U.S. Department of Justice (DOJ).[2] The letter requesting this statement was delivered by the convening authority's staff judge advocate (SJA) on 9 January 2007 and replied to affirmatively on the same day. Then, on the morning of the trial, the SJA completed the process of gaining immunity for OS3 LaPalm[3] from the convening authority. Notice of OS3 LaPalm's grant of immunity was provided to Appellant after his arraignment but before he entered his pleas.

> M.R.E. 301(c)(2) requires (emphasis added):
>
> *Notification of immunity or leniency.* When a prosecution witness before a court-martial has been granted immunity or leniency in exchange for testimony, the grant shall be reduced to writing and shall be served on the accused prior to arraignment *or within a reasonable time before the witness testifies.* If notification is not made as required by this rule, the military judge may grant a continuance until notification is made, prohibit or strike the testimony of the witness, or enter such order as may be required.

In this instance, notification of the grant of immunity was not made prior to arraignment. By itself, however, this is not a violation of the rule, which also allows that notification may occur "within a reasonable time before the witness testifies." OS3 LaPalm's testimony was given right after lunch on the second day of the trial, approximately 24 hours after the defense was provided notification of the grant of immunity. Further, the defense had in its possession the transcript of OS3 LaPalm's trial and his prior sworn statement to CGIS. This Court finds that despite the fact that defense counsel may have been surprised by the grant of immunity, having anticipated that OS3 LaPalm would remain silent, there was a reasonable time for defense

---

[2] Coast Guard Military Justice Manual, COMDTINST M5810.1D (MJM), paragraph 3.K.
[3] By this time, OS3 LaPalm was SR LaPalm, having been reduced to E-1 pursuant to court-martial sentence.

counsel to prepare for OS3 LaPalm's live testimony, and there was no violation of M.R.E. 301(c)(2). *See also United States v. Higgs*, 713 F.2d 39 (3d Cir. 1983) (finding that one day's notice of immunity was sufficient).

In the face of the government's failure to provide notice prior to arraignment and defense counsel's request to prohibit the testimony of a witness it had reasonable time to prepare for and otherwise knew the substance of the testimony of, the trial judge found no prejudice to the defense and entered "such order as may be required."  In this case, the judge denied defense counsel's motion to prohibit OS3 LaPalm's testimony, but indicated he would entertain a continuance thereafter.  In effect, defense counsel had a 24-hour opportunity to prepare for OS3 LaPalm's testimony and was offered a continuance if the testimony was not as expected.

OS3 LaPalm's immunized testimony was not the same as the reiteration of his CGIS statement at his trial or his own statement at his trial.  Despite this, defense counsel did not seek a continuance, nor did defense counsel explore the differences in OS3 LaPalm's testimony on cross-examination.  This suggests no prejudice to Appellant from the military judge's ruling, and indeed, no error in the military judge's ruling.

Though this Court has found that M.R.E. 301(c)(2) was not violated because defense counsel was given reasonable notice of OS3 LaPalm's immunized testimony, we are concerned that the Government, by failing to provide notification earlier, may have unnecessarily created a circumstance where military justice could be misperceived as being played on a less than level playing field.  Arguably in this case the Government should have provided the trial defense counsel with a copy of the DOJ letter once it was received.  Government counsel are urged to generously observe disclosure and notification requirements so as to avoid any basis for characterizing their pretrial handling of evidence and documents as "hiding the ball."

## Sentence Disparity

Claiming his sentence was inappropriately severe, Appellant urges this Court to compare his sentence to that of his co-actor, OS3 LaPalm, citing *United States v. Lacy,* 50 M.J. 286, 288 (C.A.A.F. 1999).  In its answer to Appellant's assignment of errors and brief in this case, the

Government provided, in the form of a compact disc, the record of OS3 LaPalm's trial, and moved to attach it to the record of this case. Instead of attaching it, we hereby take judicial notice of the LaPalm record of trial. The motion to attach is denied as unnecessary.

When an appellant shows that his case is "closely related" to another and where the two sentences are "highly disparate," the burden shifts to the Government to "show there is some rational basis for the disparity." *Lacy* at 288.

Sentence comparison should only occur "in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *Id.* (quoting *United States v. Ballard,* 20 M.J. 282, 283 (C.M.A. 1985)). In this case OS3 LaPalm and Appellant were charged with and found guilty of exactly the same charges and specifications based on the same event. OS3 LaPalm and Appellant were charged in exactly the same way with violations of Article 91 (conspiracy to commit assaults, two specifications), Article 128 (assaults, two specifications), and Article 134 (kidnapping, one specification). OS3 LaPalm's case was heard by officer members, Appellant's by officer and enlisted members. Like Appellant, OS3 LaPalm was only found guilty of the two assault specifications, one for assaulting Jesse with an unloaded firearm and one for hitting Jesse with a belt. OS3 LaPalm was reduced to E-1 and was fined $5000 and if the fine was not paid would be confined for 60 days.

Appellant's adjudged sentence differs significantly from OS3 LaPalm's. Like OS3 LaPalm's, Appellant's sentence included reduction to E-1. There was no fine in Appellant's sentence, but Appellant was sentenced to twelve months confinement and a bad-conduct discharge.

The two co-actors did play different roles in the specification for the assault with the unloaded firearm. OS3 LaPalm was the owner of the firearm, which he stored in a lock box in his bedroom. OS3 LaPalm testified at Appellant's trial under his grant of immunity that although he twice said "no" to Appellant's idea to threaten Jesse with the weapon, he then consented to it and removed the gun from the lock box. It was then loaded with dummy rounds.

At OS3 LaPalm's trial, Coast Guard Investigative Service (CGIS) Special Agent (S/A) Packer testified that OS3 LaPalm's oral statement to CGIS indicated that when Appellant was brandishing OS3 LaPalm's weapon in the room, it appeared to frighten Danielle. So, according to S/A Packer, OS3 LaPalm said, "It's not loaded. Those are training rounds." S/A Packer further testified that OS3 LaPalm said that Appellant then pulled the trigger and everybody laughed except Jesse, who appeared "scared." S/A Packer went on to say that OS3 LaPalm opined that Jesse wouldn't have been able to know whether the gun was loaded or not. OS3 LaPalm then retrieved the gun from Appellant and returned it to the lock box.

With the exception of minor disparities in OS3 LaPalm's statements, much the same evidence as to the event was presented by the Government in both trials. Both were found not guilty of violations of Article 91 and 134, while both were found guilty of two specification of Article 128 for assaulting Jesse with an unloaded firearm and assault and battery of Jesse with a belt. Also, on 27 May 2005, the date of the incident, both OS3 LaPalm and Appellant were E-4s.[4]

These similarities lead us to find the two cases "closely related." We find that the sentences are "highly disparate," requiring us to determine whether there is a rational basis for the disparity. OS3 LaPalm was reduced to E-1 and fined $5000.[*] Appellant's adjudged sentence was substantially greater. It included reduction to E-1, twelve months confinement, and a bad-conduct discharge.

The two co-actors engaged in different actions supporting their findings of guilty under the two specifications. The Government argues that the rational basis for the highly disparate sentences was the fact that it was Appellant who dramatically chambered a round and pointed the gun at Jesse. We find that Appellant's initiative with the gun escalated the horseplay and victimized Jesse (and discredited the Coast Guard) to a significantly greater extent than OS3

---

[4] At the time of trial, Appellant was an E-3, having been reduced as Non-Judicial Punishment for an unrelated violation of the UCMJ on 26 July 2005.

[*] Corrected.

LaPalm's role.[5]  This Court finds that the disparity in the sentence is justifiable as a matter of law.  Nonetheless, we will exercise our Article 66 authority and approve only six of the twelve months of Appellant's adjudged confinement.

### The Staff Judge Advocate

Appellant's submission to the convening authority under Rule for Courts-Martial (R.C.M.) 1105, Manual for Courts-Martial, United States (2005 ed.), through his defense counsel, seeks a reduction in confinement and includes the following:

> [Appellant] is remorseful for the events that transpired on or about 27 May 2005 and has changed greatly since that date.  During his unsworn statement [Appellant] has stated that he is sorry for the events that transpired on or about 27 May 2005.  In fact [Appellant] even offered to plead guilty to one of the specifications he was eventually found guilty of during his trial.  This indicated a desire to take responsibility for his actions and to move on with his life. [Appellant] still is of the same mindset as is made clear in his letter (Encl. (b)).

(RCM 1105 Matters Submitted by the Accused dated 13 April 2007 at 2-3.)

The SJA responded as follows:

> I also disagree with defense counsel's statement that the accused is "remorseful for the events that transpired." . . . Defense counsel raises as an example of the accused's remorsefulness his offer to plead guilty to one [of] the specifications he was ultimately convicted of at trial.  As you may recall, the pretrial offers, taken as a whole were unreasonable and on their face did not reflect a willingness on the part of the accused to fully accept responsibility.

(SJAR Addendum dated 18 April 2007 at 2.)

Appellant responded personally to this SJAR addendum, but no objection was raised to it. Appellant now claims that the quoted portion was plain error and was highly prejudicial.  The government argues that it was fair comment, not error, and not prejudicial.

---

[5] We also note that Appellant's prior record was not as clean as OS3 LaPalm's, according to the two records of trial.

This assignment of error requires this Court to examine the addendum to the SJA's Recommendation (SJAR) issued under R.C.M. 1106 specifically, and the facts on which the assignment of error is based invite our comment upon the actions of the SJA generally. We will first address the role of the SJA with respect to the government's prosecution of cases generally. We will then look at how the clemency request was addressed in the R.C.M. 1106 addendum.

R.C.M. 1106(b) is clear that "no person who has acted as a . . . trial counsel . . . may later act as a staff judge advocate to any . . . convening authority in the same case." The duties of the trial counsel are defined and discussed at R.C.M. 502(d)(5). These duties include prosecuting the case and preparing the record of trial. They also include advising the convening authority of procedural and substantive matters that arise and may require convening authority action.[6]

An SJA cannot perform trial counsel functions because it limits the SJA's ability to provide a critical independent legal review for the convening authority of how those functions were performed and their impact on the rights of the accused. "Human nature being what it is, the very fact of being called upon to condemn or countenance one's own workmanship cannot create a healthy outcome and less so when the outcome concerns the accused's denial of substantial rights." *United States v. Renton,* 8 U.S.C.M.A. 697, 701, 25 C.M.R. 201, 205 (1958); *see also United States v. Engle,* 1 M.J. 387 (CMA 1976). The SJA needs to remain as objective as possible in order to fulfill his responsibilities in both letter and spirit.

In his clemency request, defense counsel opined that Appellant's offer to plead guilty to one of the specifications was reflective of Appellant's remorse. The SJAR responded to this specific example by summarizing pretrial negotiations as "unreasonable and on their face did not reflect a willingness on the part of the accused to fully accept responsibility."

This Court does not concur with Appellant that the SJA's statements in the SJAR addendum are plain error. Error, if any, was not obvious, and there was no prejudice to

---

[6] More specific direction to Coast Guard trial counsel is also provided in the MJM, where, for example, one of the duties of a Coast Guard trial counsel is to take those steps necessary to authorize immunity for trial witnesses. *See* MJM Paragraph 3.K.2.

Appellant. We are convinced that the actions of the convening authority would not have been different if the addendum had avoided reflecting upon pretrial negotiations. However, we do not consider the addendum a model to be followed.

The SJA's advice concerning clemency in the SJAR addendum did not restate the full scope of the pretrial negotiations. Though we do not find error here, there are dangers associated with references to, and especially incomplete restatements of, pretrial negotiations. Negotiations are more likely a reflection of counsel's tactics than the accused's state of mind. Furthermore, the SJAR is not intended to be a document of advocacy for the government. An SJA should not only be objective, as noted above, but also should maintain the appearance of objectivity. SJAs should avoid delivering R.C.M. 1106 advice that could be characterized as not objective, as unsympathetic to the right of the accused and counsel to engage in a dialog during negotiations, or as dismissive of the right of the accused not to negotiate at all.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty are affirmed. We have determined that only so much of the sentence as provides for a bad-conduct discharge, confinement for six months, and reduction to E-1 should be approved. Accordingly, the sentence of a bad-conduct discharge, confinement for six months, and reduction to E-1 is affirmed.

Chief Judge McCLELLAND and Judge LODGE concur.

For the Court,



Ryan M. Gray
Clerk of the Court