UNITED STATES, Appellee

v

JOE KENNEDY, Private E–1, U. S. Army, Appellant

8 USCMA 251, 24 CMR 61

No. 9457

Decided September 20, 1957

*First Lieutenant Gene E. Overbeck* argued the cause for Appellant, Accused. With him on the brief were *Colonel J. M. Pitzer* and *Major Frank C. Stetson.*

*First Lieutenant James G. Duffy* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel John G. Lee.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

This case must be catalogued with those which are a discredit to military law as it should be practiced in courts-martial. Here we are presented with an unparalleled situation—a law officer sheds his judicial robes, requiring him to consider a motion on the facts before him, to join up with a staff judge advocate and a convening authority— who theoretically should be impartial— to force a desired result, namely, a conviction of an accused. To affirm a finding of guilt nurtured in that sort of climate would resurrect all the evils of command control and leave the court processes in the hands of those who should be outsiders to the courtroom drama.

The accused was charged with assault with intent to commit sodomy and sodomy, in violation of Articles 134 and 125, Uniform Code of Military Justice, 10 USC §§ 934 and 925, respectively. He was found not guilty of the assault but guilty of attempted sodomy, in violation of Article 80, 10 USC § 880, as a lesser included offense of the sodomy charge. He was sentenced to be dishonorably discharged, to forfeit all pay and allowances, and to be confined at hard labor for five years. The findings and sentence were approved by the convening authority. The board of review affirmed the findings, but reduced the sentence to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for one year. We granted the accused's petition for review to consider whether he was denied a fair and impartial trial by improper influence of the law officer and authorities not detailed as court personnel.

Prior to trial, the prosecution had reasonable grounds to believe that the victim of the alleged attack would be a hostile witness and refuse to testify to the facts. At the trial he was called but, despite leading questions by the trial counsel, he consistently stated that he did not remember any attack upon himself by the accused. Thereupon the witness was excused and the prosecution rested its case. Trial counsel suggested that he was willing to join in a motion for a finding of not guilty, and defense counsel so moved. The law officer then stated:

"I think it is quite obvious that there has not been any evidence presented. However, before ruling on the motion I would like a five minute recess."

From here on the record shows a concerted effort by the law officer, the staff judge advocate and members of his section, and the convening authority to use their influence to compel a conviction of the accused. The first step in the chain of circumstances was that the law officer sought out the staff judge advocate to report on the events of trial. In his testimony, the law officer stated that he received no instructions, but that is beside the point. He must have been concerned with something besides the merits of the motion, for he failed to act on his own judgment. Instead of gambling with the rights of an accused until he had an opportunity to converse with the staff judge advocate, he should have assumed his responsibilities and ruled on what was before him. Perhaps he clears up the reason for his delay because he concedes that certain subjective influences were working on him, including an appreciation of the fact that he had a career in the Army which must be considered. We sense in that expression, together with his reference to the views of his seniors, a mental reservation prompted by a belief that his rulings must not be to the dissatisfaction of higher authorities. If we properly appraise the true state of his

mind, we must say that he should re-evaluate the duties and responsibilities of a judge in the military system, decide the question presented in court, and let the ratings on his efficiency report fall where they may.

We have no reason to disagree with the principle that a law officer is not a mere figurehead and that ■ he has discretion to grant a continuance or permit a party to reopen a case and present further evidence. But we do insist that a reasonable showing to support either action must be made in court with a reporter present, in the presence of the accused and his counsel, and without the aid of interlopers. This record is completely devoid of any evidence presented in open court to justify a continuance. No doubt the law officer concluded that the witness was not telling the truth, but there are means of reaching that sin without calling an outsider to assist the prosecution in its dilemma. He asserts he merely exercised his discretion, but that was after he had consulted with the staff judge advocate and notified him that he, the law officer, would grant a continuance if trial counsel so moved. We hardly believe it in accord with judicial decorum or with the exercise of discretion for a law officer to seek out his superior to acquaint him with his views, even to the point of expressing an anticipatory ruling. In that connection, it is significant to note that being assured of a favorable ruling, the staff judge advocate and the chief of the military justice section called in the trial counsel and directed him to ask for a continuance. That is a rather unusual direction when we note that the staff judge advocate, two days prior to the trial, was informed by trial counsel that the only witness had announced he did not remember anything concerning the alleged assault and that if the witness persisted in claiming a lapse of memory, the prosecution would fail. At that time, the staff judge advocate made no objections to the trial counsel's proposed declaration that he would be required to dismiss the case if that eventuality occurred. Yet after the visit of the law officer, the staff judge advo-

cate apparently modified his views and decided to interfere in the trial of the case. As might be expected, when the court reopened, the trial counsel requested and was granted a five-day continuance. During the delay, trial counsel—probably over his objection—the chief of the military justice section, the staff judge advocate, and the convening authority worked together to compel the witness to testify. Whether the law officer joined in the activities need not concern us for he, by his ruling, provided the time for those officials to assist the Government in reclaiming its lost cause. We need not exhibit profound insight to conclude that such a possibility was anticipated by him, for that could have been the only reason for the continuance and his consultation with his superior officer. Certainly when trial counsel, who had ample time to prepare his case, joined in the motion for dismissal, it should have been apparent to anyone that the Government could not proceed unless the recalcitrant witness was coerced into changing his story.

The foregoing action by the law officer is not in keeping with the role of a judge, and it is violative of ■ paragraph 39b of the Manual for Courts-Martial, United States, 1951. In spelling out his duties, this section states:

"The law officer is repsonsible for the fair and orderly conduct of the proceedings in accordance with law in all cases which are referred to the court to which he is appointed."

We have always assumed that that provision requires a law officer to be impartial as between the parties, and it is obvious that, unwittingly or not, the presiding official in this case became an interested party for the Government. That is not the behavior of a fair and impartial judge. His duty is to resolve the case before him and not to become a zealot for law enforcement. To bring home to all law officers the necessity of remaining neutral, we repeat once again our admonition concerning this type of behavior:

". . . It is entirely possible that fervor and zeal for law enforcement

253

prompted the ill-advised consultation, but lurking in the background is the possibility of reverting to the old concept that command must control and those charged with offenses must be convicted." [United States v Guest, 3 USCMA 147, 11 CMR 147.]

An additional matter bearing on the issue must be mentioned. It is fairly reflected by the record that ▆▆▆▆▆ ▆ the law officer discussed the facts of this particular case and the means by which the Government could avoid an immediate dismissal of the case outside the courtroom and without the presence of the accused, his counsel, or a reporter. This is in violation of Article 39, Uniform Code of Military Justice, 10 USC § 839, which states:

". . . All other proceedings, including any other consultation of the court with counsel or the law officer, shall be made a part of the record, *and shall be in the presence of the accused, the defense counsel, the trial counsel, and in general court-martial cases, the law officer."* [Emphasis supplied.]

In civilian courts, it is well settled that after a criminal indictment, the accused must be present at all stages of the trial. Lewis v United States, 146 US 370, 13 S Ct 136, 36 L ed 1011 (1892) ; Crowe v United States, 200 F2d 526 (CA6th Cir) (1952) ; Fina v United States, 46 F2d 643 (CA10th Cir) (1931). Clearly the Code and reported cases strike down unilateral judicial determinations, and in this instance we are faced with out-of-court proceedings which cannot be countenanced. No doubt the officers had a worthwhile objective, but that does not justify the means used to influence the outcome of this case.

For the foregoing reasons, the case must be reversed, but there are other matters appearing in the ▆▆▆▆▆ ▆ record which should not find their way into military law. A staff judge advocate, or members of his section, and a convening authority must review a record of trial, and in that capacity they should be free to evaluate the proceedings without be-

ing required to approve a finding and sentence engineered by their own handicraft. One of the essential issues to be determined by them in this case was whether the activities of the law officer and their out-of-court maneuvering denied the accused a fair trial. However, when a staff judge advocate or his immediate juniors become the architects of a conviction, directors of trial counsel during the trial of a case, advisers to the law officer, and the prosecutors of a witness for contumacy, it seems most improbable that on review that which has been devised will be questioned. Certainly, the contention of the accused that he was the victim of command control would not be given serious consideration. Under these circumstances, the accused was denied the fair and impartial review to which he is entitled under Article 61 of the Uniform Code of Military Justice, 10 USC § 861.

Without going into great detail, we mention some of the steps taken to help the Government secure a conviction of this accused. As previously mentioned, after being informed by the law officer of a favorable ruling, either the staff judge advocate or a principal member of his section directed trial counsel to request a continuance; the convening authority was consulted for his desires and he directed coercive measures be taken against the witness; a threat of filing charges and prosecution against the witness for a number of offenses was made; a defense counsel was appointed before any charges were filed so he could be the conduit through which those assisting the Government could act.; a grant of immunity was suggested through this counsel; defense counsel in the instant case was ordered not to talk to the witness until his appointed counsel had given his approval; and no charges were preferred because the witness yielded to the pressures. We believe those facts show command control, and it should be borne in mind that this is not a case where accused induced retaliatory measures, for there is no evidence and no suggestion that he suborned the witness. Out of all those activities, we sense a powerful array of officials join-

ing together in a common cause without regard to the rights and privileges of the subject of their venture. Summed up, here the military used too much, too late.

The decision of the board of review is reversed and the case is dismissed.

Chief Judge QUINN and Judge FERGUSON concur.