UNITED STATES, Appellee

v

FREDERICK C. JOHNPIER, Private,
U. S. Army, Appellant

12 USCMA 90, 30 CMR 90

No. 14,339

Decided January 13, 1961

*First Lieutenant Ira M. Lechner* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ralph W. Wofford.*

*Captain William A. Zeigler* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy, Captain Wade H. Sides, Jr., First Lieutenant Richard E. Wiley,* and *First Lieutenant George H. Parsons.*

### Opinion of the Court

ROBERT E. QUINN, Chief Judge:

At his trial before a general court-martial for suffering a prisoner to escape, the accused moved to dismiss the charge on the ground he had previously been put in jeopardy for the same offense. The motion was denied. He was convicted as charged, and the court adjudged a sentence which includes a dishonorable discharge. He appealed to this Court to review the correctness of the ruling denying the motion to dismiss, and the sufficiency of the evidence to support the findings of guilty.

The charge against the accused originally came on for trial on January 14, 1960. On completion of the testimony of the first prosecution's witness, Recruit M. E. Stierwalt, the prisoner allegedly allowed to escape, the law officer called for an out-of-court hearing. At the hearing, he said it appeared to him that the accused might be guilty of the offense of unauthorized release of a prisoner, rather than that of suffering a prisoner to escape. He proposed to present his opinion to the court-martial, and have it decide whether to submit the matter to the con-

**91**

vening authority for his consideration, under the provisions of paragraph 55 of the Manual for Courts-Martial, United States, 1951. Defense counsel contended that, in that circumstance, the accused was entitled to a directed finding of not guilty. Thereupon, trial counsel made a "formal request" to suspend the trial so that he could "contact" the convening authority, and obtain further direction from him.

Court was reconvened. The law officer advised the court members of the provisions of paragraph 55 of the Manual. That paragraph reads as follows:

"If at any time during the trial it becomes manifest to the court that the available evidence as to any specification is not legally sufficient to sustain a finding of guilty thereof or of any lesser included offense thereunder, but that there is substantial evidence, either before the court or offered, tending to prove that the accused is guilty of some other offense not alleged in any specification before the court, the court may, in its discretion, either suspend trial pending action on an application by the trial counsel to the convening authority for direction in the matter or it may proceed with the trial. In the latter event a report of the matter may properly be made to the convening authority after the conclusion of the trial."

He also instructed them on the elements of the offense charged and compared them with those of the offense of releasing a prisoner without authority. Then he told the court to close and "determine this matter." One of the court members interjected a remark to the effect that the court had not heard sufficient evidence to decide the matter. A discussion followed. Eventually, it was decided to hear additional testimony. Recruit Stierwalt was recalled as a witness. Under questioning by trial counsel, he elaborated upon some of his earlier testimony. At one point he refused to answer a question asking whether he felt he had escaped from confinement, on the ground that he might incriminate himself. The questioning continued as follows:

"Q Have you been tried for your participation in this offense?

"A Yes, sir."

Later, while Stierwalt was still testifying, the following exchange took place between the law officer and a member of the court:

"MAJ McCOUCH: I don't understand the answer that he was afraid he would incriminate himself by answering the question of the trial counsel, if he was already tried.

"LAW OFFICER: It may be that has not been finally approved so we better not enter into that.

"MAJ McCOUCH: It may determine whether the accused is—

"LAW OFFICER: That can have no determination in this case."

When Stierwalt was excused as a witness, trial counsel indicated he next proposed to introduce into evidence a pretrial statement by the accused. Defense counsel requested an out-of-court hearing because he anticipated "a great battle" over the admissibility of the statement. The request was granted. Substantial testimony was then taken from a witness for the Government and the accused on the admissibility issue. Instead of ruling on that question the law officer ruled that "on . . . [his] own motion" he was going to take the case from the court and grant "trial counsel's request to report the matter to the convening authority for his advice and decision." Asked for his views on the proposal, defense counsel, after conferring with the accused, said the defense had no objection to the proposed action and the accused concurred "most heartedly."

Once more the court was reconvened. The law officer said he had decided to suspend the hearing. The president noted he "was going to suggest the same thing." Thereupon, the law officer formally granted trial counsel's motion to "take this up with the convening authority." The trial was suspended. About a month later, the court

met. The law officer briefly reviewed the previous proceedings, and made the following ruling directing a mistrial.

"In view of the fact that the court has been ordered to reconvene to continue the case under the Specification, as is charged in the Specification as it originally was preferred, and inasmuch as the court has heard all of the essential evidence, it would necessarily appear to the court that upon reconvening that the convening authority had determined that the charges were properly drawn. Likewise, from my action and the instructions I have given the court, it would appear to the court that it is my opinion that some other charge should have been alleged or made.

"I don't know of any way that I could instruct the court so that they would not be influenced to one side or the other, either from the action of the convening authority or my actions. Further, there is evidence before the court which should not have been considered, and that is the fact that the witness that we heard responded to a question by one of the counsel that he had been tried for his participation. However, it is not before the court for what offense he was tried, but from the inference of a reasonable man it might be inferred that he had been tried for the most obvious offense of escape from confinement.

"For these reasons, I feel that it would not be fair to ask this court to attempt to put these considerations out of their minds in determining the facts, as they would necessarily be required to do in determining the guilt or innocence of this accused and, for these reasons, I will not ask the court to do so, but will declare a mistrial in this case."

On March 4, 1960, the case came on for trial before a new court and a new law officer. As previously noted, in an out-of-court hearing the accused moved to dismiss the charge on the ground he had been placed in jeopardy by the first trial, which he contended was improperly terminated by the law officer's declaration of a mistrial. The motion was denied. The correctness of the ruling is challenged on this appeal.

As indicated in the above quotation from the record, two reasons were advanced by the law officer to support his ruling. Appellate defense counsel maintain that both reasons are wholly insufficient to justify a mistrial, and it was an abuse of discretion to so end the trial. See Cornero v United States, 48 F 2d 69 (CA 9th Cir, (1931); United States v Whitlow, 110 F Supp 871, 876 (DC DC) (1953).

A mistrial may be granted whenever it appears that some circumstance arising during the proceedings casts substantial doubt upon the fairness of the trial. The courts have not attempted to make a definitive list of the occasions justifying the declaration of a mistrial. Among the situations which have been recognized is one involving the receipt of inadmissible evidence.[1] For example, improper reference to other acts of misconduct by the accused is ground for terminating the trial. United States v Shepherd, 9 USCMA 90, 25 CMR 352; United States v Richard, 7 USCMA 46, 21 CMR 172. It is apparent that during the recess, pending receipt of the convening authority's decision, the law officer carefully reviewed the record of trial and concluded that at least one member of the court attached importance to Stierwalt's statement that he had been tried for his "participation" in the incident. He correctly observed that considering the nature of the offense for which Stierwalt was tried, it was reasonably inferable that he "had been tried for the most obvious offense of escape from confinement." It is also apparent the law officer doubted that any instruction to disregard the implications of Stierwalt's testimony would be sufficient to remove its effect on the court. The critical issue, as the

---

[1] For an extensive review of the development of the principles relating to the declaration of a mistrial, see the scholarly opinion of Member Jones in United States v Reese, 24 CMR 467.

law officer saw it, was whether the witness had escaped or had been released without proper authority. Evidence that another court had convicted the prisoner of escape was undoubtedly a substantial, adverse circumstance against the accused. Thus, the law officer had two courses of action open to him. He could attempt to eliminate the possibility of prejudice to the accused by instructing the court members to disregard the implications of Stierwalt's testimony; or, if he concluded that an instruction would not remove the risk of prejudice, he could, in the interest of justice, declare a mistrial. United States v Shepherd, supra. Having legitimate alternatives of action, it can hardly be said that the law officer's choice of one over the other is an abuse of judicial discretion.

Since one of the two reasons given by the law officer is plainly sufficient to support his ruling, there would ordinarily be no need to discuss the remaining reason. However, suspension of the proceedings under paragraph 55 of the Manual is too important a matter to be passed over without comment. In United States v Turkali, 6 USCMA 340, 20 CMR 56, the concurring opinion alluded to some of the dangers inherent in the procedure. It was pointed out that the procedure is "one-sided" and, therefore, unfair, in that it gives the Government a preliminary "advisory opinion" on the court's attitude toward the evidence. This case confirms the present-day inappropriateness of the procedure, and gives substance to the idea that it tends to make the law officer a "mere figurehead" in the trial.

Appellate defense counsel contend that since the procedure of suspension is sanctioned by the Manual and by the decision of the majority of this Court in the *Turkali* case, there was no possible justification for the law officer's conclusion that his authority was undermined by the convening authority's direction to continue with the trial. There are, however, "nuances" in the atmosphere of a trial which cannot be fully depicted in the cold pages of the record of trial. Unit-

ed States v Gori, 282 F2d 43 (CA2d Cir) (1960). One of the nuances in this case indicates rather clearly that the law officer was convinced the convening authority's direction seriously compromised his position as the judge of the court, and gave rise to substantial doubt whether the court-martial would remain uninfluenced by the apparent "victory" of the convening authority on a point of law. Cf. United States v Knudson, 4 USCMA 587, 16 CMR 161. The pages of the record confirm his feeling. Also, the law officer was a member of the Field Judiciary Division, and a stranger to the command which convened the court. It is not at all fanciful to imagine that, as the situation developed, he lost not only "face," but also control over the court. We have no difficulty, therefore, in concluding that on this ground, too, the declaration of a mistrial was justifiable. Moreover, we are convinced that the paragraph 55 procedure for suspension of trial in order to obtain the views of the convening authority is both archaic and injudicious. It is contrary to the express language of Article 51, and violates the spirit of the Uniform Code and the purposes for which it was enacted. Accordingly, the contrary view set out in United States v Turkali, supra, is overruled.

For his second assignment of error, the accused contends the evidence is insufficient to support his conviction of the offense charged. Article 96, which defines the offense, provides as follows:

"Any person subject to this chapter who, without proper authority, releases any prisoner committed to his charge, or who through neglect or design suffers any such prisoner to escape, shall be punished as a court-martial may direct. . . ."

According to the evidence, Stierwalt was a prisoner in the post stockade. He was assigned to a work detail guarded by the accused, who was armed with a shotgun. The detail left the stockade and went to a wooded area to "pull brush." Arriving at the assigned area, it "took a smoke break." In the course of the break, the accused engaged in

conversation with the prisoners. One of them offered the accused some money to "let him escape." A general discussion about terms of payment followed. The accused said "if he had fifty dollars he would let him go and get out of there." However, nothing definite evolved from the talk. Later in the morning, Stierwalt spoke to the accused. While the accused "didn't say right then" that he would allow Stierwalt to escape, he agreed to give him fifteen minutes "head start before he sounded the alarm." Stierwalt departed. He went an unspecified distance from the detail, but fearing that the accused might "shoot . . . [him] in the back," he turned around and called out to the others the basis of his fear. One of the prisoners assured him that he would not be fired on. Stierwalt then left the area. In a pretrial statement which was admitted into evidence, the accused said he told Stierwalt that "he would let one of the prisoners hold his shotgun while . . . [he] escaped."

Accused's counsel maintain that while the evidence may be sufficient to show release without authority, it does not establish suffering a prisoner to escape. The argument is based on the idea that in the case of release without authority, the custodian removes the restraint, whereas in suffering an escape, the prisoner casts off the restraint. See United States v Trimble, 2 CMR 718. The record of trial, however, shows clearly that the accused committed the offense charged.

Some discussion of the difference between releasing a prisoner without authority, and suffering an escape, appears in the Manual for Courts-Martial. Particularly applicable is subdivision a, paragraph 175, which reads as follows:

"While a provost marshal, commander of a guard, or master-at-arms must receive a prisoner properly committed by any officer, the power of the committing officer ceases as soon as he has committed the prisoner, and he is not, as such committing officer, a proper authority to order a release. Normally, the lowest authority competent to order release is the commanding officer of the command of which the prison, stockade, brig, retraining command, or guard holding the prisoner, is a part. See 22.

"An officer may receive in his charge a prisoner not committed in strict compliance with the terms of Article 11a or other law, and a prisoner having been so received has been duly committed.

"The release of a prisoner is a removal of restraint by the custodian rather than by the prisoner. Circumstances which justify charges against the custodian for release of a prisoner without proper authority will not justify charges against the prisoner for escape from confinement. However, the offense of escape from confinement and that of suffering a prisoner to escape through neglect, or through design, may arise out of the same occurrence."

Apparently, the defense argument is premised on the last paragraph of the quoted statement. The paragraph is meaningful, however, only in the context of the preceding remarks. These indicate that unauthorized release contemplates a situation in which the custodian removes the restraint under circumstances indicating to the prisoner, and perhaps to a reasonable bystander, that the prisoner is no longer in legal confinement. In other words, as far as the prisoner is concerned, he is released under color of authority. As a result, it is not the prisoner but the custodian who is at fault in effecting termination of the confinement. This explains the Manual statement that circumstances "which justify charges against the custodian for release of a prisoner without authority will not justify charges against the prisoner for escape from confinement." Here, it is obvious to all, that the accused had no authority to let Stierwalt go, and that Stierwalt had no reason to believe he was legally free of further restraint. In fact, almost until he was out of

sight, Stierwalt felt he would be shot in the back.

The word "suffer," as used in Article 96, does not appear to have a meaning other than that accorded to it in ordinary and general usage. The dictionary definition of the act, as used in the Article, is "to allow; to permit; not to forbid or hinder; also to tolerate; to put up with." Webster's New International Dictionary, Second Edition, page 2520. That definition precisely portrays the accused's conduct. He allowed, or at least he did not hinder, Stierwalt's escape. Thus, the evidence amply supports the findings of guilty of the offense charged.

The decision of the board of review is affirmed.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

In several recent opinions, complaints have been registered about the instability of our case law. If that is a valid criticism—and I believe it is when a well-established legal principle is reversed—this decision should take its place at or near the top of the list. Here a prior decision is overruled when it is admitted that such a result is unnecessary to a proper disposition of the issues. When that situation prevails, the die is cast even though lower tribunals will be confounded. It is to be remembered that they are required to give full faith and credit to our holdings at the time a case is before them and constant vacillation at this level does not aid them in the orderly administration of military justice. However, when my brothers conclude to reverse a prior case without it being questioned by either party, anything I could say to preserve some degree of consistency is of little avail. Accordingly, I merely note my disagreement with the gratuitous advice that a majority of the Court erred in United States v Turkali, 6 USCMA 340, 20 CMR 56.