UNITED STATES, Appellee

v

BENJAMIN F. COLE, Fireman,

U. S. Navy, Appellant

12 USCMA 430, 31 CMR 16

*Lieutenant Colonel M. G. Truesdale,* USMC, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Eric L. Keisman,* USNR.

*Lieutenant John W. Boult,* USNR, argued the cause for Appellee, United States. With him on the brief was *Captain Warren C. Kiracofe,* USN.

## Opinion

HOMER FERGUSON, Judge:

Tried by general court-martial, the accused was found guilty of rape, in violation of Uniform Code of Military Justice, Article 120, 10 USC § 920, and burglary with intent to commit rape, in violation of Code, supra, Article 129, 10 USC § 929. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for five years, and reduction to the grade of fireman recruit. The convening authority reduced the accused's sentence to bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for three years, and reduction. The board of review directed the preparation of a new post-trial advice and its submission to another convening authority. This action resulted in approval of the same findings and penalty. Upon further review, the board of review affirmed, and we granted accused's petition in order to resolve numerous issues which revolve around the testimony and conduct of the principal prosecution witness and the rulings of the law officer in connection therewith. We need, however, reach only one of these matters.

Briefly stated, the evidence purports to establish that the accused, for the purpose of "getting some sex," chose the home of the victim at random, forced open a window screen, and surreptitiously entered. Finding the victim in bed, he forced her to submit to an act of sexual intercourse. Thereafter, he fled but was soon apprehended.

The victim appeared at the accused's trial as a witness for the United States. Her testimony on direct examination depicts the occurrence of the crimes charged in clear and unmistakable terms. Upon its completion, defense embarked upon a searching cross-examination in which he sought to establish that the witness had embellished her testimony to a considerable extent, particularly with reference to the manner in which accused entered her home; whether the accused had threatened her with a knife in order to attain his ends; and whether she had consented to his actions. The law officer expressly noted in the record that counsel put his questions in a normal tone and that his conduct was in no way abusive. Nevertheless, when the defense attorney attempted to establish the precise manner in which the accused managed to hold the knife at the prosecutrix' throat and, at the same time, remove both his and her lower garments, the witness responded violently. Thus, the following transpired:

"A. He pulled them off and he done everything I said he did and I am not lying. He'll burn for it if it's the last thing I do."

When admonished by the law officer, the witness replied, "The accused ought to be burned." A recess was declared, and as she left the courtroom, the witness engaged in an otherwise undescribed "outburst toward the accused." Upon the reconvening of the court, this was made a matter of record, and the

**431**

law officer warned the prosecutrix against a recurrence.

A short time later, defense counsel directed his cross-examination toward the witness' marital difficulties and her previous immoral conduct. She refused ·to answer any questions concerning "my marriage or any boy friends." The law officer ruled that she did not have to answer any question which would tend either to incriminate her or degrade her. Upon objection, however, the law officer remarked that he would make his ruling on each question which the witness refused to answer rather than abstractly to determine the question of her rights. Thereafter, the witness simply refused to permit any inquiry into her previous conduct on the basis that such matters were personal. She declined to claim any right against self-incrimination.

The ensuing proceedings consist of a series of controversies between the witness, the law officer, and counsel over whether she would submit to cross-examination. Despite repeated admonitions and warnings, the prosecutrix refused to cooperate. An out-of-court hearing followed in which the law officer indicated that he had been extremely lenient with the witness and now intended to refer the matter to the convening authority for direction in the premises. However, another effort was made to secure the witness' submission. When the witness was made aware of the need for her testimony and that the case would otherwise come to "an abrupt end," she replied:

"WITNESS: You said I had the right to refuse to answer, and if you want to drop charges, drop them. He'll kill somebody sooner or later."

Defense counsel immediately moved that the witness' testimony be stricken in view of her "constant refusal . . . to answer." The law officer denied the motion and once again stated his intention to refer the matter to the convening authority. However, upon the urging of trial counsel, he acceded to a request that a last attempt be made to complete the prosecutrix' cross-examination. This also ended in failure. Defense counsel renewed his motion to

have the witness' testimony stricken. The law officer refused to grant the motion and referred the case to the convening authority for instructions.

On the following day, the court-martial reconvened. It was noted in the record that the convening authority directed that the trial proceed, "that Mrs. . . . [C] had testified on direct examination about the incident and had testified on cross-examination concerning the incident, that she had denied consent, that the questions about which she was refusing to testify dealt with her character and credibility and consent, and on these issues the defense, of course, could be afforded an opportunity to rebut, and that for those reasons the trial was not invalidated and could proceed."

Before ruling that the trial would proceed the law officer again lectured the prosecutrix on her duty to submit to cross-examination. This only elicited further outbursts from the witness and her departure from the courtroom. Over defense objection, the law officer directed the trial to continue and again denied a motion to strike the prosecutrix' testimony.

We need not go into the question whether the accused was denied his right fully and completely to cross-examine the major witness for the prosecution, particularly in view of her ultimate reappearance and response to many of the defense inquiries, nor the effect of her unwarranted outbursts in the presence of the members of the court-martial. These matters are not likely to occur at any rehearing of the case, and direction of that action is required by the law officer's reference of the proceedings to the convening authority for resolution of the issue before him.

In United States v Knudson, 4 USCMA 587, 16 CMR 161, the accused applied to the law officer for a continuance. It was granted. Thereafter, the convening authority directed that the trial resume, and the law officer acquiesced in that ruling. We reversed, The Chief Judge stating, at page 591:

"Having no power to review the law officer's grant of a continuance,

432

the convening authority should not inject himself into the proceedings. *However honest may be his belief that he possesses the power, he cannot substitute his judgment for that of the law officer. He can refer the charges to trial, and, if he wishes, he can in a proper case dissolve the court or change its personnel. However, none of these rights give him the power to control the law officer in the exercise of his statutory duties.* In the words of the Manual, 'An officer who has power to convene a general court-martial may determine the cases to be referred to it for trial and may dissolve it, but he cannot control the exercise by the court of the powers vested in it by law.' Ibid, paragraph 5a (6), page 8." [Emphasis supplied.]

In United States v Kennedy, 8 USCMA 251, 24 CMR 61, a prosecution witness refused to testify in a manner which would support the allegations against the accused. Both counsel joined in a motion for a finding of not guilty. Rather than grant the motion, the law officer declared a recess and consulted the staff judge advocate. Thereafter, a concerted effort by the parties caused the witness to testify satisfactorily for the Government. In reversing and dismissing the charges, a unanimous Court, speaking through Judge Latimer, declared, at page 252:

". . . In his testimony, the law officer stated that he received no instructions, but that is beside the point. He must have been concerned with something besides the merits of the motion, for he failed to act on his own judgment. Instead of gambling with the rights of an accused until he had an opportunity to converse with the staff judge advocate, *he should have assumed his responsibilities and ruled on what was before him.*" [Emphasis supplied.]

See also United States v Ivory, 9 USCMA 516, 26 CMR 296, concurring opinion of Chief Judge Quinn, and United States v Johnpier, 12 USCMA 90, 30 CMR 90, in which we again pointed out that it was the duty of the law officer to rule upon matters before

him rather than to report the issues to the convening authority. In the latter case, we expressly overruled our contrary holding in United States v Turkali, 6 USCMA 340, 20 CMR 56.

From the foregoing, it is clear that the law officer of a general court-martial is required to rule on all interlocutory matters which arise in the trial and may not escape his responsibility in the premises by referring the matter to the convening authority and allowing that officer to intrude his wishes into the proceedings. United States v Knudson, supra; United States v Kennedy, supra; United States v Johnpier, supra. In short, when Congress provided authority for the law officer to rule upon interlocutory questions in a general court-martial, it intended to require reliance upon his discretion as an independent judicial officer and not upon that of the convening authority. Code, supra, Article 51, 10 USC § 851. Indeed, that independence of action is one of the major bulwarks created under the Code against command control of military legal proceedings. United States v Knudson, supra, concurring opinion of Judge Brosman; House Report No. 491, 81st Congress, 1st Session, page 7. Thus, it is apparent that the law officer must decide the question which is before him without reference of the controversy to his military superiors. United States v Kennedy, supra.

Turning to the record before us, we find that the law officer, faced with a recalcitrant witness who refused to submit to cross-examination sought to evade his responsibility and to abdicate his authority in favor of the officer who convened the court-martial. Having received directions in the premises—which, incidentally, acknowledged the relevance of the defense inquiries but seemingly ignored the importance of the right to cross-examine—he directed that the trial proceed. Thus, the officer charged by the Code with the duty to act independently chose slavishly to accede to his superior's direction and refused to rely upon his own discretion. That such action was prejudicial

**433**

to the accused is clearly apparent, for the witness' testimony went directly to both offenses charged. Indeed, she was the victim of each such crime and the convening authority's interference placed substantial limitations upon the ability of the defense properly to explore the truthfulness of her declarations. Moreover, the convening authority's direction that the trial proceed went beyond the mere passing on the issue before the law officer and gratuitously referred to the prosecutrix' denial of consent and other testimony in such a manner that its presentation in front of the court members obviously indicated that he believed accused's guilt to be established. The effect of this comment cannot be brushed aside when combined with the source from which the court members were informed that it emanated. Compare United States v Johnpier, supra, at page 94, and United States v Knudson, at page 597. It is, therefore, certain that the accused's substantial rights were affected and that reversal is required.

We cannot leave this matter without expressing the belief that this witness' contumacious attitude developed to the extent here portrayed almost solely because of the vacillating attitude of the law officer. The questions put to the prosecutrix were not insulting, and it is admitted on the record that counsel did not use harassing methods. Had the law officer taken a firm position at the beginning of the controversy and insisted that the witness answer, she might well have complied with his directions. We recommend that law officers of general courts-martial not hesitate to employ the powers conferred upon them by Congress in order that military trials may proceed in a fair and orderly manner. See Code, supra, Articles 47, 48, 10 USC §§ 847, 848, and United States v DeAngelis, 3 USCMA 298, 12 CMR 54. While instances such as here depicted are fortunately rare, institution of contempt proceedings should serve wholly to eliminate them.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge QUINN concurs in the result.