**UNITED STATES, Appellee**

v

**CHARLES J. PELTON, III, Airman Basic,
U. S. Air Force, Appellant**

**19 USCMA 131, 41 CMR 131**

No. 22,068

December 19, 1969

*Major John T. Dorman* argued the cause for Appellant, Accused. With him on the brief was *Colonel Bertram Jacobson.*

*Major Robert L. Bates* argued the cause for Appellee, United States. With him on the brief were *Colonel James R. Thorn* and *Lieutenant Colonel Robert W. Vayda.*

## Opinion of the Court

QUINN, Chief Judge:

On this appeal, the accused challenges the sufficiency of the instructions as to one of two charges of larceny of which he was convicted by a special court-martial. The assignment of error requires examination of the evidence.

Sergeant Patrick Callahan testified that the pinion gear and rear axles of his 1965 Pontiac GTO were removed, without his knowledge and consent, sometime during the night of September 24, 1968. On September 30, Callahan was approached by the accused, whom he had never before seen, and was engaged in conversation about his car. The substance of the conversation was repeated on three other occasions, as the accused came and went from Callahan's place of duty. The accused told Callahan he "knew that he would be suspected of" taking parts from Callahan's car because "everything that goes on in the squadron they always came to him first." Callahan assured the accused there was nothing to worry about if he was not involved, and he told the accused the Office of Special Investigations had "fingerprints on the car." The accused admitted he had been "underneath the car"; he said he went to retrieve a football that had rolled under it. Callahan again assured the accused that, if he "had witnesses" to the football game he purportedly played, there was "nothing to worry about." Eventually, the accused informed Callahan that the parts removed from his car were purchasable for $35.00 or $40.00; he was willing to remove these parts from his own 1964 Pontiac GTO and give them to Callahan, if Callahan would tell the OSI he had known the accused "from before" and the accused had merely "borrowed these parts," so Callahan was now willing "to drop everything." They agreed to meet the next morning outside the Hobby Shop to effect transfer of the parts before the OSI agent investigating the theft "could get a hold of them to use as evidence." Callahan informed OSI Agent Calvin Downey of his conversation with the accused.

The next morning, before the scheduled meeting with Callahan, the accused was interrogated by Agent Downey. After proper advice as to his right to remain silent and right to counsel, the accused told Downey that he and Callahan were "old friends" and he had "borrowed" the parts from Callahan's car to prepare his own car "for a trip to Phoenix." The oral statement was amplified by a written statement, which was admitted into evidence at trial without defense objection. In the written statement, the accused said "Pat wasn't around" at the time he "borrowed" the parts to put them into his own car, but he "knew" that Pat "wouldn't mind."

Shortly after the interview with Downey, the accused met Callahan. They walked to the "back" of the Hobby Shop, where the accused's car was undergoing repair work. As the accused and Callahan prepared to remove the gear and axles, Downey appeared. When the parts were removed from the accused's car, which took about forty-five minutes, Downey took possession of them. Callahan testified he could not identify these parts as those taken from his car, but when they were later installed in his car, they worked "great." It further appeared that the accused worked on the flight line from 4:00 p.m. to midnight on September 24. Technical Sergeant Lee Roberts, the shift supervisor,

testified that persons on the shift were allowed smoke and snack breaks, but were not authorized to leave the flight line without permission. However, it was "impossible" for him to know whether anyone actually left the area without permission.

At the end of the Government's case, individual defense counsel moved for a finding of not guilty. In part, he maintained that the evidence "established" that the gear and axles "belonged" to the accused, not Callahan, and that the accused had removed these parts from his own car because he was frightened "into surrendering his property to avoid" prosecution. Counsel further argued that the accused had not been in a "position" to take the parts because he was on duty and would certainly have been "missed" if he had remained away for the time it took to remove the parts from a car. "All we have," counsel insisted, was a case in which the accused "was in possession of his own property which he was frightened into surrendering."

The defense case consisted of testimony concerned only with the second charge of larceny. The accused did not testify.

In final argument to the court members, defense counsel reiterated the earlier contention that the gear and axles belonged to the accused, not Callahan. Again, he asserted that the accused's offer to give the parts to Callahan "was the act of a very scared person, . . . a person who was afraid that he would be implicated" in the theft. He also emphasized that in stripping Callahan's car there was "an awful lot to do in one night for one person" and the accused could not have done it in the time available to him.

The instructions to the court members covered the elements of larceny, the requirements of proof, and other standard principles of law. No mention was made of the legal effect of the accused's pretrial representations that he and Callahan were "old friends" and he had "borrowed" the parts from Callahan's car in the certain knowledge that Callahan "wouldn't mind." In United States v Hayes, 8 USCMA 627, 25 CMR 131, we pointed out that in military law not every wrongful taking of the property of another without consent is criminal. We commented on the distinction between borrowing property under circumstances indicating the absence of a criminal intent and a wrongful taking of property with the intent to deprive the owner of its possession; and we held that, when justified by the evidence, a specific instruction on this difference may be required to assure understanding by the court members. See also United States v Caid, 13 USCMA 348, 32 CMR 348; State v Savage, 37 Del 509, 186 Atl 738 (1936). Relying upon *Hayes*, the accused contends the instructions in this case were prejudicially deficient because they did not refer to the legal effect of his pretrial statements.

Pretrial statements by an accused which are admitted in evidence must be considered to determine the nature and scope of required instructions. United States v Kuefler, 14 USCMA 136, 33 CMR 348. Considered apart from other evidence and proceedings at trial, the pretrial statements here could, if believed, support a conclusion by the court members that the accused had no criminal intent. The credibility of the statements would be a matter for determination by the court members. United States v Kuefler, supra. However, the pretrial statements do not stand alone.

It clearly appears, not only from Callahan's undisputed testimony but from the defense argument on both the motion for a finding of not guilty and the merits, that the accused's representations that he was Callahan's friend and had "borrowed" the parts from Callahan's car with the knowledge that Callahan "wouldn't mind," were wholly fictional. They were intended to deceive the OSI and elim-

**133**

inate the accused as a suspect in the investigation. The intended purpose failed, but the record demonstrates that everyone at the trial understood the pretrial statements were false. Defense counsel repudiated them as the misguided effort of "a very scared" accused to escape involvement in a theft which he did not, and could not, commit. Now that the accused has been convicted, we cannot accept his invitation to transform the lies into ostensible truths and give them a legal effect he expressly rejected at trial. See United States v Ayers, 14 USCMA 336, 342, 34 CMR 116.

The decision of the board of review is affirmed.

Judge FERGUSON concurs in the result.

DARDEN, Judge (concurring):

If the accused had attempted to convince the court that he only borrowed the pinion gear and axles, I would reverse his conviction of specification 2 because the law officer did not instruct on the necessary criminal intent. Although an accused has the right of trying to establish inconsistent defenses (see United States v Rine, 18 USCMA 421, 422, 40 CMR 133), in this instance the Government introduced a statement that was inconsistent with a defense that the accused had not taken the property. The trial strategy of the accused was directed toward persuading the court that the theft had not occurred. Consequently, a *sua sponte* instruction on *mens rea* could have nullified the defense that the counsel of the accused elected. I concur in affirming the decision of the board of review because of this special circumstance.