270

**UNITED STATES, Appellee,**

v.

**Russell W. HARVILLE, Airman Basic,
U.S. Air Force, Appellant.**

**No. 37,996.
ACM S24696.**

U. S. Court of Military Appeals.

Dec. 13, 1982.

For Appellant: *Captain Patrick A. Tucker* (argued); *Colonel George R. Stevens, Captain Douglas H. Kohrt* (on brief); *Colonel Larry G. Stephens.*

For Appellee: *Major George D. Cato* (argued); *Colonel James P. Porter* (on brief); *Major James R. VanOrsdol.*

Opinion of the Court

FLETCHER, Judge:

At his special court-martial[1] appellant was found guilty, *inter alia,* of wrongful appropriation of an automobile. We granted review of this case to determine whether the evidence is insufficient as a matter of law to support the conviction of this offense. We have perused the testimony at trial. As we conclude that it failed to exclude any fair and reasonable doubt except that of guilt, we reverse the decision of the court below regarding that offense. 7 M.J. 895.

---

1. Contrary to his pleas, appellant was found guilty of wrongful appropriation of an automobile and uttering bad checks; and consistent with his pleas of AWOL, in violation of Articles 121, 123a and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 923a and 886, respectively. Appellant was sentenced to a bad-conduct discharge, confinement at hard labor for 3 months, and forfeiture of $279.00 pay per month for 3 months.

A brief examination of the evidence is essential. Appellant, charged with stealing Airman Rebecca Lemke's auto, was confronted at trial by two government witnesses. The less important one was Staff Sergeant Ibanez, who interviewed Lemke concerning the vehicle after it was reported missing. The principal witness, however, was Lemke herself, who stated that she owned the automobile and had frequently allowed appellant to borrow her car.

Review of the entirety of Lemke's testimony reveals somewhat contradictory assertions. On the one hand, at one point in her testimony Lemke denied giving appellant verbal permission to use the automobile off base on August 1, 1978. She, however, explained that she reported the automobile missing the next afternoon, but did not consider it stolen. Apparently her concern was not only for her automobile, but also for appellant's well-being. Lemke's uniforms and several other personal possessions were in the automobile.

On the other hand, however, during cross-examination, Lemke testified that she was aware appellant, a close friend, wanted to use her automobile to drive to Texas. She had discussed this with appellant and contrary to her earlier testimony, she admitted that she had told him he could use her car to make such a trip. However, on the date in question, appellant had not informed her that he had taken the automobile to Texas or where he could be reached. A conversation with one of the maids, however, led her to believe there could have been a note on her door containing such information.

The defense to this charge consisted solely of appellant's testimony. Appellant denied stealing Lemke's automobile and believed he had verbal permission from Lemke to take her automobile to Texas. He had used Lemke's automobile several times; they were friends. It was his understanding that whenever he had to go to Texas he only had to let Lemke know where he was going and when he would be back. He got this impression from a conversation he had with Lemke a few days before August 1, 1978. He told Lemke that

he would be gone three or four nights. During that conversation, she gave him permission to take her car on the trip.

On August 1, 1978, he overslept and missed an appointment. He called Texas and decided to go there but did not know Lemke's duty telephone number or her place of duty. He did not then ask Lemke's permission to use the automobile because she was at work. Instead, he left a note on her door which indicated where he had gone, when he would return, and how she could reach him. By leaving the note, he believed he was complying with their understanding as to the use of the automobile.

■ "Not every wrongful taking constitutes a violation of Article 121," Uniform Code of Military Justice, 10 U.S.C. § 921. *United States v. Hayes,* 8 U.S.C.M.A. 627, 629, 25 C.M.R. 131, 133 (1958); *see United States v. Pelton,* 19 U.S.C.M.A. 131, 41 C.M.R. 131 (1969); *United States v. Caid,* 13 U.S.C.M.A. 348, 32 C.M.R. 348 (1962). "[T]he mere 'borrowing' of an article of property without the prior consent of the owner does not make out either of the offenses under Article 121." *United States v. Hayes, supra* at 629–30, 25 C.M.R. at 133–34. There must be a criminal taking in order to make out an offense under Article 121. *United States v. Bridges,* 12 U.S.C.M.A. 96, 30 C.M.R. 96 (1961). Borrowing an item—even without the owner's consent—does not per se constitute an Article 121 offense. *Mens rea* is required.

■ In order to sustain a conviction, the evidence must not only prove all the elements of the offense; it must also "exclude . . . any fair and rational hypothesis except that of guilt." Para. 74a (3), Manual for Courts-Martial, United States, 1969 (Revised edition). *United States v. Mason,* 8 U.S.C.M.A. 329, 24 C.M.R. 139 (1957). Appellant testified that he took Lemke's automobile believing he had her permission to do so. He borrowed the property thinking he had satisfied the notice requirement she demanded by leaving a note on her door. Appellant asserts that he never believed he had committed an offense. Whether or not

one totally accepts appellant's contention that he borrowed the car with permission and left a note on Lemke's door, at the very least we cannot conclude that this possibility was entirely rebutted by Lemke's testimony. Lemke stated that the maid indicated a message of some sort was on her door. The testimony only indicates that the unexplained disappearance of Lemke's car resulted from a communication break-down between Lemke and appellant as to the extent notice was to be given prior to departure. Thus, the evidence is insufficient as a matter of law to support the conviction of wrongful appropriation of the automobile. There remains reasonable doubt that appellant is guilty.

The decision of the United States Air Force Court of Military Review as to Charge II and the sentence is reversed. The findings as to this charge are set aside and this charge is dismissed. The record of trial is returned to the Judge Advocate General of the Air Force for submission to that court for reassessment of the sentence in light of the remaining findings of guilty.

Chief Judge EVERETT concurs.

COOK, Judge (dissenting):

Since I disagree with both the majority's rendition of the facts and their application of the law, I must respectfully dissent.

### FACTS

The evidence relating to the offense of wrongfully appropriating an automobile came, for the most part, from the owner, Airman Lemke, and from the accused. The former testified that she reported to Barksdale Air Force Base, Louisiana, on July 29, 1978, and stayed in "[b]illeting" where she met the accused. On August 1, 1978, she lent her automobile to the accused with the understanding that he was to return the car "[n]ot later than 1600 hours that afternoon." When the car was not returned by the following afternoon, she reported the incident to the security police because she "was afraid that something had happened." Several days later, she made a statement to the security police in which she reported that the car was stolen. Airman Lemke had left her uniforms and "just about" "all . . . [of her] personal belongings" in the car as she had expected it to be returned no later than 1600 hours. She testified that she had not given accused permission to use the car off base. On cross-examination, however, Airman Lemke stated that she had given the accused permission to drive her car to Texas, but she later clarified this by saying that she had not given the accused permission to use her car to go to Texas on that particular date.

The accused presented a somewhat different version of the events. He testified that he and Airman Lemke had talked about his trip

a few days prior to the day I left. She knew that I didn't know exactly for sure when I would be going. She knew that I would be gone for a couple of days and she gave me her permission to use it. I have used it several times before. In fact I had used it a couple of days before I left.

The accused also testified that, at that time, he and Airman Lemke "were close friends" as he was then separated from his wife. The accused admitted that on August 1, he had permission to use the car to go to his appointment, and that he did not personally inform her on that date that he was going to Texas because she was at work. However, he believed that "she would let . . . [him] use the car to go anyplace." He further testified that he "left her a note [which was never found] to tell her where . . . [he] was going," but conceded that he had not obtained permission to take the car to make the trip on that particular day; he was to have returned the car "at 1600 hours."

Faced with this apparent conflict of testimony, the military judge included the following in his prefindings instructions:

The court is further advised that not every wrongful taking constitutes a violation of the Uniform Code of Military Justice. The intent to deprive the owner of his property, either permanently or

temporarily, must include a guilty or wrongful purpose. The mere borrowing of an article of property without the prior consent of the owner is not either larceny or wrongful appropriation when the borrower honestly assumed the owner would not mind and would consent if consulted prior to the taking. To constitute an offense, there must be present the criminal intent to deprive another person of the use and benefit of the property, either permanently or temporarily. The burden is on the prosecution to establish the accused's guilt by legal and competent evidence beyond a reasonable doubt. Consequently, unless you are satisfied by legal and competent evidence beyond a reasonable doubt that the alleged taking was wrongful, you must acquit the accused as to this offense.

## THE LAW

The majority cite four of our cases for the proposition that the evidence of the criminal intent of the accused is insufficient to sustain the conviction. While these cases facially define the *mens rea* necessary for conviction of larceny or wrongful appropriation, they were decided in a different context from the one before us here.

In *United States v. Hayes,* 8 U.S.C.M.A. 627, 25 C.M.R. 131 (1958), the accused, who worked in the finance office, arranged for a friend to receive advance pay so that the friend could buy an automobile. The money was to be repaid by means of deductions from the friend's regular monthly pay checks. This Court concluded that such a procedure was not authorized by finance regulations. After two such deductions, the friend "learned that the advance was questionable and requested that he receive no further pay until his indebtedness was . . . liquidated." With the evidence in this posture, the law officer instructed only on the elements of larceny. The court-martial found the accused guilty of the lesser included offense of wrongful appropriation. On appeal, the Government contended that since the same money could not be recovered, only the offense of larceny was in issue. This Court rejected that conclusion; however, it found that the law officer's instructions were legally insufficient for the following reasons:

Not every wrongful taking constitutes a violation of Article 121. [Citation omitted.] The intent to deprive the owner of his property, either permanently or temporarily, must include a *mens rea.* Therefore, the mere "borrowing" of an article of property without the prior consent of the owner does not make out either of the offenses defined in Article 121. Something more is required, and that something is criminal intention. Thus, if one visits the office of a friend, and, finding him absent, takes a book which he has come to borrow, leaves a note to that effect, and returns the book the next day, there is no intent to steal or misappropriate the book and, necessarily, no violation of Article 121. According to the evidence, *under proper instructions* the court-martial here could have acquitted the accused because of the absence of any criminal intent. Consequently, the instructions were legally insufficient.

*Id.* at 629–30, 25 C.M.R. at 133–34 (emphasis added).

In *United States v. Bridges,* 12 U.S.C.M.A. 96, 30 C.M.R. 96 (1961), the accused asked an Airman Donovan for a ride to a nearby village to see a girl. Donovan refused and told the accused that he intended to leave his car parked at the hotel where they were staying because he was not sober enough to drive. While Donovan was absent from the room for a few minutes, accused took his car keys, which Donovan had left on a table, and drove off in the car. The car was later found wrecked, with the accused in the front seat. Prior to that evening, accused had not been permitted to drive Donovan's car, but contended that "Donovan 'probably would have let him have the car' if he had asked for its loan and if he had been able to produce his operator's permit." *Id.* at 97, 30 C.M.R. at 97. Prior to findings, defense counsel asked the president of the special court-martial to

give an instruction essentially along the lines of the material quoted in *Hayes;* he refused and did not enlarge upon the question of criminal intent. The Court held that such refusal constituted prejudicial error, stating:

While there is certainly room for another view, we believe the proof here is such that the court-martial could reasonably have found that accused lacked the criminal frame of mind necessary for a conviction of wrongful appropriation. [Citations omitted.] Accordingly, upon his request, accused was entitled to an instruction which clarified for the court-martial the question of criminal intent and required it to find that he possessed the necessary *mens rea.*

12 U.S.C.M.A. at 99, 30 C.M.R. at 99.

In *United States v. Pelton,* 19 U.S.C.M.A. 131, 41 C.M.R. 131 (1969), the victim testified that the pinion gear and rear axles of his 1965 Pontiac were stolen. Several days later, he was approached by the accused who talked about the car. After several such conversations, the accused offered to remove the similar parts from his 1964 Pontiac and give them to the victim if the victim would tell the investigators that he knew the accused and that the accused had merely "borrowed these parts" and that the victim "was . . . willing 'to drop everything.'" The accused made a written statement to this effect and related that when he borrowed the parts, he knew the victim "wouldn't mind." 19 U.S.C.M.A. at 132, 41 C.M.R. at 132. The victim testified that he could not identify the parts but "they worked 'great.'" The accused did not testify. Defense counsel argued that there was no crime, but merely the accused's giving up his own property because he was frightened. The instructions given to the court-martial covered the standard elements of larceny, but no mention was made of the accused's version of the events. On appeal, the accused contended that the instructions were legally insufficient. This Court held that:

Considered apart from other evidence and proceedings at trial, the pretrial statements here could, if believed, support a conclusion by the court members that the accused had no criminal intent.

However, that did not resolve the instructional issue since it was clear from both the evidence and defense counsel's arguments "that . . . accused's representations that he . . . had 'borrowed' the parts . . . were wholly fictional." *Id.* at 133, 41 C.M.R. at 133. Hence, the accused cannot "transform the lies into ostensible truths and give them a legal effect he expressly rejected at trial." *Id.* at 134, 41 C.M.R. 134. Judge Darden, the concurring judge, would have reversed for the failure to instruct except that, because of the special circumstances of the case, the instruction would "have nullified the defense" which the accused presented. *Id.*

Finally, in *United States v. Caid,* 13 U.S.C.M.A. 348, 32 C.M.R. 348 (1962), the accused pleaded guilty to wrongful appropriation of a military uniform belonging to another airman. During the providence inquiry, the accused testified that he had only borrowed the uniform for the purpose of attending his trial and that he left a note in the victim's room to that effect. The victim denied ever seeing the note. The accused further stated that at the time he was discovered with the uniform, he did not believe that he had been caught in the commission of a crime. Citing both *Hayes* and *Bridges,* this Court held:

If credited, such testimony on the accused's part is totally inconsistent with the existence of the *mens rea* necessary to conviction of either larceny or wrongful appropriation. [Citations omitted.] It was, therefore, the duty of the president to inquire into the providence of the plea of guilty to the lesser offense and, if accused did not disavow his testimony, to set it aside.

13 U.S.C.M.A. at 351, 32 C.M.R. at 351.

Hence, *Hayes, Bridges,* and *Pelton* deal with the test of when an instruction must be given on criminal intent, and *Caid* deals with the situation of an inconsistent response during a providence inquiry. The rule as to the former is that "the trial judge

must instruct the jury on every issue or theory having any support in the evidence." *United States v. Verdi,* 5 M.J. 330, 333 (C.M.A.1978) (footnote omitted); *United States v. Graves,* 1 M.J. 50 (C.M.A.1975); and the rule as to the latter is that the military judge must reject a plea of guilty "[i]f the accused sometime during the proceeding sets up matter which is inconsistent with a plea of guilty." *United States v. Davenport,* 9 M.J. 364, 367 (C.M.A.1980); *United States v. Moglia,* 3 M.J. 216 (C.M.A. 1977).

In this case, we have a totally different situation. The accused pleaded not guilty and the factual issue of criminal intent was submitted to the court-martial members under proper instructions from the military judge. The proper test for our review is whether "the record contains competent and credible evidence from which [the court members] 'could find, *beyond a reasonable doubt,* the existence of every element' of the offenses charged." *United States v. Grandy,* 11 M.J. 270, 275 (C.M.A.1981), quoting *United States v. Arias,* 3 M.J. 436, 438 (C.M.A.1977), and citing *United States v. Taylor,* 21 U.S.C.M.A. 220, 44 C.M.R. 274 (1972). *See also United States v. Brown,* 3 M.J. 402 (C.M.A.1977); *United States v. McCrary,* 1 U.S.C.M.A. 1, 1 C.M.R. 1 (1951).

Here, the court members, as triers of fact, could reasonably choose to believe the victim's testimony that she only gave the accused permission to use her car for an on-base errand, and that it was to be returned by "1600 hours"; and to disbelieve accused's testimony that he believed that he had blanket permission to take her car to Texas whenever he wished. In this regard, the members may well have chosen to disbelieve the accused's testimony of an implied consent based upon usage since the two had been acquainted, however closely, for a period of only four days. Under these facts, I cannot conclude, as a matter of law, that the evidence was insufficient to support the findings of the members beyond a reasonable doubt. Our proper function as an appellate court limited to reviewing questions of law is not "to substitute our judgment for that of the triers of fact" or "to seek out hypotheses of innocence, but to determine whether there is sufficient competent evidence to support the findings of guilty." *United States v. McCrary, supra* at 3, 4, 1 C.M.R. at 3, 4 (1951). I conclude that there was.

I would, therefore, affirm the decision of the United States Air Force Court of Military Review.